ASSOCIATION OF AMERICAN MEDI-
CAL COLLEGES, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary,
Department of Health, Education
and Welfare, et al.

No. 75–1888.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 16, 1976.

Decided Dec. 1, 1977.

Bruce R. Hopkins, Washington, D. C., with whom Thomas A. Roha, Washington, D. C., was on the brief, for appellant.

John M. Rogers, Atty., Dept. of Justice, Washington, D. C., for appellees Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Robert E. Kopp and David M. Cohen, Attys., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

Opinion for the Court filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant herein, the Association of American Medical Colleges, prosecuted in the District Court a challenge to regula-

tions promulgated by the Secretary of Health, Education, and Welfare fixing limits on reimbursement under the Medicare Act [1] of costs incurred by providers of Medicare services. Reaching the merits of the case, the court sustained the regulations as reasonable and consistent with congressional objectives.[2] We find that appellant's failure to pursue the Act's remedial administrative procedures that culminate in judicial review left the District Court without subject-matter jurisdiction over the action.

I

The Medicare program undertakes cost-reimbursement to those who provide certain services to the program's beneficiaries.[3] The amount of reimbursement is based either on the provider's customary rates for the services rendered or on the "reasonable costs" of those services, whichever is less.[4] Reimbursement is usually effected through a fiscal intermediary, such as the Blue Cross Association, to which authority is delegated to administer the Act and supervise payments to healthcare providers.[5]

In 1972, when Congress amended the Medicare statutes,[6] it defined "reasonable costs" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services."[7] Additionally, Congress empowered the Secretary of Health, Education, and Welfare to promulgate regulations[8] establishing the "method or methods" for ascertaining what costs are unnecessary, and hence unreasonable.[9] Congress indicated that the regulations should give "wide, but not unlimited recognition . . . to the variations in [provider] costs accepted as reasonable" when those variations flowed from "differences in size, in the nature and scope of services provided, the type of patient treated, the location of the institution and various other factors," but that inefficiency and extravagance were not to be subsidized.[10]

In 1974, the Secretary exercised his rule-making authority, publishing in the Federal Register a notice of a proposed schedule of limits on hospital costs for routine services[11]—"the regular room, dietary, and nursing services, minor medical and surgical

**1.** First enacted as part of the Social Security Act of 1965, Pub.L.No. 89–97, 79 Stat. 291, the Health Insurance for the Aged (Medicare) Act is codified, *as amended*, at 42 U.S.C. § 1395 *et seq.* (1970 & Supp. V 1975). The Medicare Act was further amended after compilation of 42 U.S.C. Supp. V with respect to details not significant to disposition of the instant case.

**2.** *Association of Am. Medical Colleges v. Weinberger*, Civ. No. 75–0888, at 13–15 (D.D.C. June 30, 1975) (unreported), Joint Appendix (J.App.) 268–270.

**3.** 42 U.S.C. § 1395f (1970 & Supp. V 1975), *as amended*, Act of Sept. 30, 1976, Pub.L.No. 94–437, Title IV, § 401(a), 90 Stat. 1408.

**4.** 42 U.S.C. § 1395f(b) (Supp. V 1975), providing:

The amount paid to any provider of services with respect to services for which payment may be made under this part shall, subject to the provisions of section 1395e of this title, be—
(1) the lesser of (A) the reasonable cost of such services, as determined under section 1395x(v) of this title, or (B) the customary charges with respect to such services; or
(2) if such services are furnished by a public provider of services free of charge or at

nominal charges to the public, the amount determined on the basis of those items (specified in regulations prescribed by the Secretary) included in the determination of such reasonable cost which the Secretary finds will provide fair compensation to such provider for such services.

**5.** 42 U.S.C. § 1395h(a) (Supp. V 1975). See generally Homer & Platten, *Medical Provider Reimbursement Disputes: An Analysis of the Administrative Hearing Procedure*, 63 Geo.L.J. 107, 109–111 (1974).

**6.** Social Security Amendments of 1972, Pub. L.No. 92–603, §§ 222–531, 86 Stat. 1329 (amending 42 U.S.C. § 1395 *et seq.* (1970)).

**7.** 42 U.S.C. § 1395x(v)(1)(A) (Supp. V 1975).

**8.** The Secretary has general rulemaking power under 42 U.S.C. § 1302 (1970).

**9.** 42 U.S.C. § 1395x(v)(1)(A) (Supp. V 1975).

**10.** S.Rep.No. 1230, 92d Cong., 2d Sess. 187 (1972); accord, H.R.Rep.No. 231, 92d Cong., 1st Sess. 82–83 (1971).

**11.** 39 Fed.Reg. 10313 (1974).

supplies, and the use of equipment and facilities for which a separate charge is not customarily made."[12] As issued in final form after the requisite comment procedures,[13] the schedule divided the Nation into groupings in which states were arrayed according to per capita income.[14] Hospitals in each group were divided according to location within standard metropolitan statistical areas and location at nonurban points outside those areas,[15] and were further categorized by the number of patient beds maintained.[16] Dollar figures specifying the upper limit of "reasonableness" for routine charges were assigned to these categories.[17]

In 1975, the Secretary published a notice proposing a revised schedule of limits on hospital in-patient general routine service costs for cost-reporting periods beginning on or after July 1, 1975.[18] The notice indicated that location within standard metropolitan statistical areas had replaced state location as the principal geographical classification factor for urban areas although state location remained key for nonurban hospital.[19] The schedule grouped statistical areas and states according to per capita income, and continued to subclassify hospitals by number of beds.[20] It was published

in final form in May 1975, unchanged in essential detail.[21]

Appellant is an association of nearly 400 medical schools and their affiliated hospitals,[22] all providers of Medicare services.[23] In the District Court appellant complained that routine costs of a grossly disproportionate number of its members would automatically become presumptively unreasonable under the schedule as finally formulated. This result was attributed to the Secretary's asserted failure to accord appropriate weight to inter-hospital variations in patient mix and scope of provided services, and to the Secretary's reliance instead on bed-count as an index of reasonable cost. Appellant characterized this alleged omission as contrary to statute, arbitrary and capricious, and an abuse of discretion. Appellant sought a judgment declaratory of the schedule's invalidity, an injunction against recourse to it, and mandamus to require promulgation of substitute regulations.

The District Court assumed subject-matter jurisdiction pursuant to Section 10 of the Administrative Procedure Act[24] and 28 U.S.C. § 1331(a).[25] On the merits, the court concluded that, in promulgating the schedule at issue, the Secretary did consider all

**12.** 20 C.F.R. § 405.452(d)(2) (1974).

**13.** See 5 U.S.C. § 553 (1970). No one suggests that the schedule as finally issued was tarnished by any irregularity in the processes leading to its adoption.

**14.** 39 Fed.Reg. 20168 (1974). The schedule was applicable to reporting periods beginning on or after July 1, 1974 and before the earlier date of July 1, 1975 or the effectuation of any revised schedule. *Id.*

**15.** *Id.*

**16.** *Id.*

**17.** *Id.* 20168–20170.

**18.** 40 Fed.Reg. 17190 (1975).

**19.** *Id.* 17191.

**20.** *Id.*

**21.** 40 Fed.Reg. 23622 (1975).

**22.** Brief for Appellant at 2, *Association of Am. Medical Colleges v. Weinberger, supra* note 2, at 2, J.App. 257.

**23.** *Association of Am. Medical Colleges v. Weinberger, supra* note 2, at 2, J.App. 257; see 42 U.S.C. § 1395x(u) (Supp. V 1975) (defining "provider").

**24.** 5 U.S.C. §§ 701–706 (1970), *as amended*, Act of Oct. 21, 1976, Pub.L.No. 94–574, § 1, 90 Stat. 2721.

**25.** 28 U.S.C. § 1331(a) (1970), *as amended*, Act of Oct. 21, 1976, Pub.L.No. 94–574, § 2, 90 Stat. 2721, providing:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States, except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

relevant factors [26] and that the Secretary's reliance on an administrative exceptions-process for treatment of atypical educational costs incurred by teaching hospitals was permissible.[27] This appeal followed.

## II

■ While the appeal was pending, the Supreme Court held in *Califano v. Sanders* [28] that Section 10 of the Administrative Procedure Act is not an independent source of federal subject-matter jurisdiction.[29] Appellant asserts, however, that the District Court had federal-question jurisdiction under Section 1331(a).[30] Because of the ban imposed upon such jurisdiction by Section 205(h) of the Social Security Act,[31] which now is incorporated in the Medicare Act,[32] we reject appellant's invocation of federal-question jurisdiction.

Section 205(h) is directly applicable to claims arising under Title II of the Social Security Act.[33] It provides that the Secretary's findings and decisions "after a hearing" on such a claim shall be binding upon the parties to the hearing.[34] It specifies further that "[n]o findings of fact or deci-

sion of the Secretary shall be reviewed by any . . . tribunal . . . except as herein provided," [35] and nowhere in the Social Security Act [36] is there any provision relieving Section 1331(a) from this prohibition. Section 205(h) also ordains that "[n]o action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under [Title II]." [37] Since Section 1331(a)'s jurisdictional grant was derived wholly from a long-standing predecessor—the Section 41 spoken of [38]—it would follow that Section 205(h), if a jurisdictional barrier rather than an exhaustion-of-remedies requirement,[39] denies federal-question jurisdiction of Title II Social Security claims.[40] This is important because by a provision in the Medicare legislation,[41] codified as Section 1395ii,[42] Section 205(h) was incorporated into the Medicare Act "to the same extent . . . applicable with respect to [Title II]." [43]

■ Because, however, Section 205(h) refers to "findings and decisions of the Secretary after a hearing," to "findings of fact or decisions of the Secretary" and to "any

**26.** *Association of Am. Medical Colleges v. Weinberger, supra* note 2, at 13–14, J.App. 268–269.

**27.** *Id.* at 14, J.App. 269.

**28.** 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

**29.** *Id.* at 107, 97 S.Ct. at 985, 51 L.Ed.2d at 200–201.

**30.** After the decision in *Califano*, the parties at our invitation filed supplemental memoranda addressing the problem posed by the elimination of § 10 as a jurisdictional base.

**31.** 42 U.S.C. § 405(h) (1970), analyzed in text *infra* at notes 34–40.

**32.** See text *infra* at notes 41–43.

**33.** In its entirety § 205(h) provides:
The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United

States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

**34.** See note 33 *supra.*

**35.** See note 33 *supra.*

**36.** See note 33 *supra.*

**37.** See note 33 *supra.*

**38.** See Reviser's Note to 28 U.S.C. § 1331 (1970).

**39.** We shall advert to that matter again. See text *infra* at note 50.

**40.** See *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 2463, 45 L.Ed.2d 522, 534, quoted in text *infra* at note 50.

**41.** Pub.L.No. 89–97, tit. I, § 102(a), 79 Stat. 332 (1965).

**42.** 42 U.S.C. § 1395ii (Supp. V 1975).

**43.** *Id.*

claim arising under this subchapter," [44] appellant maintains that the section applies only to formal adjudications of claims for statutory benefits and does not inhibit federal-question jurisdiction over a broad attack on an administrative regulation. Appellant insists that the issues becoming relevant when a regulation is challenged can no better be resolved at an administrative hearing than in a judicial proceeding, and asserts that in the present case resort to the administrative process would in any event have been futile because the administrative tribunal, the Provider Reimbursement Review Board,[45] was powerless to invalidate a Medicare regulation. If appellant's theory were correct, jurisdiction would lie pursuant to Section 1331(a).

We believe, however, that appellant's argument is foreclosed by the Supreme Court's decision in *Weinberger v. Salfi.*[46] There the Court held that Section 205(h) precluded federal-question jurisdiction under Section 1331(a) of a challenge to the duration-of-relationship requirements of the Social Security Act excluding from eligibility for Social Security insurance benefits surviving wives and step-children whose respective relationships to a deceased wage earner have endured for less than nine months prior to his death.[47] A district court had ruled in favor of Section 1331(a) jurisdiction, concluding that Section 205(h) was merely a codification of the doctrine of exhaustion of administrative remedies.[48] The Supreme Court disagreed:

> That the third sentence of § [2]05(h) [49] is more than a codified requirement of administrative exhaustion is plain from its own language, which is sweeping and direct and which states that *no* action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted.[50]

Moreover, the *Salfi* Court held that the reach of Section 205(h) "extends to any 'action' seeking 'to recover on any [Title II Social Security] claim [51]—irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his *nondiscretionary application of allegedly unconstitutional statutory restrictions.*" [52] Restriction of district court examination of constitutional challenges to that authorized by the Social Security Act's review provision [53] was deemed

44. See note 33 *supra.*

45. See 42 U.S.C. § 1395*oo* (Supp. V 1975).

46. *Supra* note 40.

47. 42 U.S.C. §§ 416(c)(5), (e)(2) (1970 & Supp. V 1975).

48. *Salfi v. Weinberger,* 373 F.Supp. 961, 964 (N.D.Cal.1974) (three-judge court).

49. See note 33 *supra.*

50. 422 U.S. at 757, 95 S.Ct. at 2463, 45 L.Ed.2d at 534. The Court also ruled that because the Social Security Act furnished "both the standing and the substantive basis for the presentation of [the plaintiffs'] constitutional contentions," the action arose under Title II of the Act within the contemplation of the third sentence of § 205(h), see note 33 *supra. Id.* at 760–761, 95 S.Ct. at 2464, 45 L.Ed.2d at 536.

51. See note 33 *supra.*

52. 422 U.S. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 536 (emphasis supplied).

53. Social Security Act, § 205(g), 42 U.S.C. § 405(g) (1970), which in pertinent part provides:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . .

Section 205(g) has been merged into the Medicare Act only for certain purposes not relevant here. 42 U.S.C. § 1395ff(b) (1970 & Supp. V 1975) authorizes judicial review pursuant to § 205(g) of challenges by individuals to determinations on eligibility for Medicare benefits or the amount thereof. 42 U.S.C. § 1395pp(d) (Supp. V 1975) conditionally affords a provider the same rights that an individual has under § 1395ff(b) with respect to certain claims for expenses believed at least by the recipient of the services to be covered by the Medicare Act but actually excluded, in all other respects, administrative and judicial consideration of provider-cost reimbursement disputes is governed by § 1395*oo* of the Medicare Act. See note 60 *infra.*

"manifestly reasonable" [54] because it assured the Secretary the opportunity to ascertain prior to constitutional litigation whether the claims involved were invalid for other reasons or perhaps cognizable under other provisions of the Act.[55]

So, under *Salfi*, quite aside from exhaustion considerations, jurisdiction pursuant to Section 1331(a) is negated by Section 205(h) with respect to any action envisioning recovery on any claim emanating from Title II of the Social Security Act. To precisely "the same extent," [56] the "sweeping and direct" language of Section 205(h) [57] precludes Section 1331(a) jurisdiction of suits seeking eventual realization of provider-cost reimbursement under the Medicare Act. It cannot be gainsaid that the case at bar arises under the Medicare Act, for it supplies "both the standing and the substantive basis for the presentation of [appellant's] . . . contentions." [58] Nor can it be doubted that Section 205(h) intercepts litigation confronted by the spectre of "nondiscretionary application of allegedly unconstitutional restrictions" imposed by an administrative regulation as well as by a statute.[59] And no less than its counterpart in the Social Security Act is the review provision of the Medicare Act [60] a

54. 422 U.S. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537.

55. The Court intimated, however, that § 205(h) could not permissibly bar judicial review of constitutional challenges altogether. However, providing review of such claims under § 205(g), see note 53 *supra*, ensured the constitutionality of § 205(h). *Id.* See also *Califano v. Sanders, supra* note 28, 430 U.S. at 99, 97 S.Ct. at 986, 51 L.Ed.2d at 202; *Johnson v. Robison,* 415 U.S. 361, 366–367, 94 S.Ct. 1160, 1165–1166, 39 L.Ed.2d 389, 397–398 (1974); *Ralpho v. Bell,* 186 U.S.App.D.C. ——, 569 F.2d 607 (1977), at 24–26, *rehearing denied,* (D.C.Cir. Sept. 12, 1977), at 2–3 & n. 6; *St. Louis Univ. v. Blue Cross Hosp. Serv.,* 537 F.2d 283, 291–292 (8th Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976); *Elliott v. Weinberger,* 564 F.2d 1219, 1226–1227 (9th Cir. 1977).

56. See text *supra* at note 43.

57. See text *supra* at note 50.

58. See note 50 *supra.*

59. See text *supra* at note 52.

60. 42 U.S.C. § 1395oo (Supp. V 1975), in relevant part providing:
(a) Establishment.
Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board (hereinafter referred to as the "Board") which shall be established by the Secretary in accordance with subsection (h) of this section, if—
(1) such provider—
(A) is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due to the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report,
(B) has not received such final determination from such intermediary on a timely basis after filing such report, where such report complied with the rules and regulations of the Secretary relating to such report, or
(C) has not received such final determination on a timely basis after filing a supplementary cost report, where such cost report did not so comply and such supplementary cost report did so comply,
(2) the amount in controversy is $10,000 or more, and
(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A) or with respect to appeals pursuant to paragraph (1)(B) or (C), within 180 days after notice of such determination would have been received if such determination had been made on a timely basis.
(b) Appeals by groups.
The provisions of subsection (a) of this section shall apply to any group of providers of services if each provider of services in such group would, upon the filing of an appeal (but without regard to the $10,000 limitation), be entitled to such a hearing, but only if the matters in controversy involve a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more.
\*　　\*　　\*　　\*　　\*　　\*
(f) Finality of decision; judicial review; jurisdiction; venue; interest on amount in controversy.
(1) A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board,

"manifestly reasonable" palliative.[61]

Even assuming, then, that appellant or its members could not obtain relief from the Secretary's allegedly defective regulation through the Medicare Act's administrative processes [62] because of the Provider Reimbursement Review Board's inability to repudiate the governing regulation,[63] jurisdiction still would not lie under Section 1331(a).[64] The *Salfi* plaintiffs clearly could not have obtained from the Secretary a ruling of unconstitutionality of a statute that the Secretary was bound to enforce, yet their action was denied federal-question jurisdiction, and resort to the administrative process was required. Appellant's contention that the availability of federal-question jurisdiction of this lawsuit depends upon whether the issues in dispute can be dealt with better at an administrative hear-

## III

We further conclude that jurisdiction of this litigation cannot be founded upon Section 1395*oo* of the Medicare Act, which specifies the scheme for administrative and judicial treatment of provider-reimbursement claims.[65] That section authorizes review of disputed claims by the Provider Reimbursement Review Board,[66] and among the situations in which audience may be obtained before the Board is when a provider is dissatisfied with the total amount of reimbursement approved by the fiscal intermediary.[67] Jurisdiction is bestowed on the federal courts to review a "final decision" of the Board or a "reversal, affirmance, or modification" of such a decision by the Secretary.[68]

ing than in a judicial proceeding must accordingly fail.

or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title.

**61.** See text *supra* at notes 54–55.

**62.** See note 60 *supra*.

**63.** That appellant could not obtain satisfaction of claims for more extensive reimbursement through the administrative process is highly questionable. Although the Provider Reimbursement Review Board cannot invalidate a regulation as contrary to law, it is fully empowered to grant exceptions to the regulations at issue here. See 20 C.F.R. § 405.460(e), (f) (1977); *Association of Am. Medical Colleges v. Weinberger, supra* note 2, at 10, J.App. 265. The record does not indicate that appellant's member hospitals have ever applied for an exception. *Id.*

**64.** *Aristocrat South, Inc. v. Mathews,* 420 F.Supp. 23, 25 (D.D.C.1976). Indeed, other circuits have held that *Salfi* forecloses jurisdiction under § 1331(a) in reimbursement actions emanating from the Medicare Act notwithstanding a constitutional attack. *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910, 913 (2d Cir. 1976) (constitutional challenge to a

regulation); *Hazelwood Chronic & Convalescent Hosp., Inc. v. Weinberger,* 543 F.2d 703, 705 (9th Cir. 1976), *vacated for reconsideration in light of Califano v. Sanders, supra* note 28, 430 U.S. 952, 97 S.Ct. 1595, 51 L.Ed.2d 801 (1977) (constitutional assault on regulations); see *Gallo v. Mathews,* 538 F.2d 1148, 1150 (5th Cir. 1976). Compare *Dr. John T. MacDonald Foundation, Inc. v. Mathews,* 554 F.2d 714 (5th Cir. 1977), in which the court recognized § 1331(a) jurisdiction over a provider-reimbursement dispute arising prior to the time that § 1395*oo* (f) was broadened to allow review of final decisions of the Board, see note 68 *infra.* The court observed:

During the period before it provided adequate statutory review within the Medicare Act, and during that period only, Congress did not intend § [2]05(h) to preclude federal-question jurisdiction over such matters as this. We [recognize jurisdiction] realizing that our construction is strained . . . .

554 F.2d at 718.

**65.** The significant portion of § 1395*oo* appears in note 60 *supra.*

**66.** 42 U.S.C. § 1395*oo* (a) (Supp. V 1975), quoted *supra* note 60.

**67.** 42 U.S.C. § 1395*oo* (a)(1)(A) (Supp. V 1975), quoted *supra* note 60.

**68.** *Id.* § 1395*oo* (f)(1), quoted *supra* note 60. Prior to October 1974, judicial review under § 1395*oo* was limited strictly to decisions by the Secretary reversing or adversely modifying determinations by the Board. See 42 U.S.C.

In *Salfi*, the Supreme Court, after examining the language of the review provision applicable there—Section 205(g) of the Social Security Act [69]—held that a central precondition to federal-court jurisdiction under that provision was that a suitor first obtain a "final decision" by the Secretary.[70] Although the Court recognized a limited role for traditional exhaustion principles in determining what constitutes a "final" decision by the Secretary "made after a hearing," [71] the Court emphasized that Section 205(g)'s demand for *some* "final decision" was a jurisdictional prerequisite and not simply a codification of the exhaustion doctrine.[72] Thus the requirement "may not be dispensed with merely by a judicial conclusion of futility." [73]

Similarly, Section 1395oo of the Medicare Act exacts an administrative determination as a jurisdictional postulate.

§ 1395oo (f) (Supp. III 1973). The 1974 amendment of § 1395oo (f), effective for accounting periods ending on or after June 30, 1973, authorizes judicial review of final decisions of the Board and of any reversal, affirmance or modification of any Board decision by the Secretary. Act of Oct. 26, 1974, Pub.L.No. 93-484, § 3(a)-(b), 88 Stat. 1459.

**69.** 42 U.S.C. § 405(g) (1970), reproduced in part at note 53 *supra*.

**70.** 422 U.S. at 764, 95 S.Ct. at 2466, 45 L.Ed.2d at 538; see *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18, 29 (1976).

**71.** 422 U.S. at 764–767, 95 S.Ct. at 2466–2468, 45 L.Ed.2d at 538–540. The Court held that the Secretary had full authority under the Act to specify exhaustion requirements serving his interest in effective administration of the Act. In a case such as *Salfi*, the Secretary might properly conclude that because the only issue was the constitutionality of a statutory demand, and the claim was neither invalid nor cognizable under a different section of the Act, exhaustion beyond the presentation of claims for benefits to the plaintiffs' district Social Security office and then to the regional office for reconsideration—which some of the plaintiffs had done in that case—would have been futile and inefficient. Because the Secretary did not deny that at least some members of the plaintiff class had adequately pursued administrative remedies, the Court held that subject-matter jurisdiction lay under § 205(g) with respect to those plaintiffs who had done so. *Id.* See also *Mathews v. Diaz*, 426 U.S. 67, 75–77, 96 S.Ct. 1883, 1889–1890, 48 L.Ed.2d 478, 487–488 (1976); *Ellison v. Califano*, 546 F.2d 1162 (5th Cir. 1977).

**72.** 422 U.S. at 764–766, 95 S.Ct. at 2466–2467, 45 L.Ed.2d at 538–539. See also *Mathews v. Diaz, supra* note 71, 426 U.S. at 75, 96 S.Ct. at 1889, 48 L.Ed.2d at 487; *Ellison v. Califano, supra* note 71, 546 F.2d at 1164.

**73.** 422 U.S. at 766, 95 S.Ct. at 2467, 45 L.Ed.2d at 539. The Court concluded that a denial of benefits based on the plain wording of the statute alleged to be constitutionally defective was a "decision" of the Secretary for purposes of § 205(g), even though the Secretary was powerless to deviate from the statutory mandate. *Id.* at 764, 95 S.Ct. at 2466, 45 L.Ed.2d at 538.

*Mathews v. Eldridge, supra* note 70, involved a constitutional attack on termination procedures utilized by the Secretary in the administration of the disability insurance benefits program under the Social Security Act, 42 U.S.C. § 423 (1970 & Supp. V 1975). The Court, following *Salfi*, held that § 205(h) precluded federal-question jurisdiction, and then explained the nature of the § 205(g) exhaustion requirement as interpreted in *Salfi*:

*Salfi* identified several conditions which must be satisfied in order to obtain judicial review under § 405(g). Of these, the requirement that there be a final decision by the Secretary after a hearing was regarded as "central to the requisite grant of subject-matter jurisdiction . . . ." 422 U.S. at 764, 95 S.Ct. at 2466. Implicit in *Salfi*, however, is the principle that this condition consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. *The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute.*

424 U.S. at 328, 96 S.Ct. at 899, 47 L.Ed.2d at 29 (emphasis supplied) (footnote omitted). The Court held that Eldridge had fulfilled the crucial prerequisite of presentation of his claim for benefits to the Secretary. Eldridge had answered a state agency's questionnaire concerning his eligibility, and in a letter in response to a tentative ruling of noneligibility Eldridge had specifically advanced the claim that in light of his continuing disability his benefits should not be terminated. This claim was denied by the state agency, and that decision was accepted by the Social Security Administration. *Id.* at 329, 96 S.Ct. at 900, 47 L.Ed.2d at 30.

More specifically, before a suitor may obtain judicial consideration of a claim arising under the Medicare Act, he must first present the claim to the Provider Reimbursement Review Board and obtain a "final decision" by it.[74] The nature of the claim may influence the type of proceeding needed,[75] but some kind of proceeding before the Board is indispensable.

■ Although appellant disputes the amount of cost-reimbursement obtainable through its members' fiscal intermediaries, it does not deny that Section 1395oo in terms authorizes Board consideration of its members' claims.[76] The Board was indeed an available forum for members' claims for "full" reimbursement,[77] and an administrative grant to the members of an exception from the challenged regulation—a disposition within the Board's power[78]—may well have made further litigation unnecessary. If, as appellant alleges, the exception process is unduly burdensome, it nonetheless

could have presented the reimbursement claims without pursuing an exception; and, in either event, if the claims were turned down, judicial review of the Board's final decision would have been available. The Secretary would thereby have been assured the opportunity to determine whether the claims were invalid for other reasons or cognizable under other theories,[79] and a reviewing court would have been assisted in its scrutiny of the challenged regulation by its application to particular facts. Having failed to resort to the administrative process delineated in Section 1395oo, appellant may not now predicate jurisdiction on that section.

## IV

■ Although appellant has not asserted on appeal additional grounds for jurisdiction, it did invoke the federal mandamus provision, 28 U.S.C. § 1361,[80] in its com-

---

**74.** See 42 U.S.C. § 1395oo (f)(1) (Supp. V. 1975), quoted *supra* note 60.

**75.** *Cf. Mathews v. Eldridge, supra* note 70, 424 U.S. at 330–332, 96 S.Ct. at 900–901, 47 L.Ed.2d at 30–31 (Eldridge's claim to a predeprivation hearing as a matter of constitutional right necessarily implied a view that full relief could not be obtained at a post-deprivation hearing; hence Eldridge's presentation of his claim for benefits was ample exhaustion under § 205(g), and he need not have also asserted his constitutional claim in a post-termination hearing before the Secretary); *Weinberger v. Salfi, supra* note 40, 422 U.S. at 764–765, 95 S.Ct. at 2466–2467, 45 L.Ed.2d at 538–539 (because appellees raised a constitutional challenge to a statutory requirement, presentation of claims for benefits to appellees' district and regional Social Security offices was sufficient exhaustion for purposes of § 205(g)).

**76.** Of course, appellant's members can pursue their administrative remedies individually under § 1395oo. But § 1395oo (b), quoted *supra* note 63, authorizes administrative appeals by groups of providers when the claims in controversy involve a common question of fact or interpretation of law or regulations. In text, for brevity's sake, we speak of presentation by appellant of its member's reimbursement claims without expressing any opinion as to which of the two procedural avenues appellant's member hospitals must or should traverse under § 1395oo. See also 20 C.F.R. § 405.1835–.1837 (1977).

**77.** See *Aristocrat South, Inc. v. Mathews, supra* note 64, 420 F.Supp. at 24–26.

**78.** See note 63 *supra*.

**79.** See *Weinberger v. Salfi, supra* note 40, 422 U.S. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537; text *supra* at notes 54–55.

**30.** 28 U.S.C. § 1361 (1970). The Mandamus and Venue Act of 1962, codified at 28 U.S.C. § 1361 (1970), confirmed the historic jurisdiction of the District Court for the District of Columbia to issue directive orders when federal officials act contrary to law, and extended that mandamus jurisdiction to the other federal district courts. *Peoples v. United States Dep't of Agriculture*, 138 U.S.App.D.C. 291, 294–295, 427 F.2d 561, 564–565 (1970). When the performance of official duty calls for a construction of governing law, the officer's interpretation will not be disturbed by a writ of mandamus unless it is clearly wrong and his official action is arbitrary and capricious. *Haneke v. Secretary of HEW*, 175 U.S.App.D.C. 329, 334 n. 15, 535 F.2d 1291, 1296 n. 15 (1976); *Cartier v. Secretary of State*, 165 U.S.App.D.C. 130, 138 n. 8, 506 F.2d 191, 199 n. 8 (1974), *cert. denied*, 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *Hammond v. Hull*, 76 U.S.App.D.C. 301, 302, 131 F.2d 23, 25 (1942), *cert. denied*, 318 U.S. 777, 63 S.Ct. 830, 87 L.Ed. 1145 (1943). Mandamus is an extraordinary remedy, and it is to be employed only under exceptional circumstances, for courts will intervene

plaint.[81] And in any event, we are sensitive to an obligation to explore any promising avenue to the District Court's jurisdiction, whether or not suggested by the parties.[82] So it is that we have come to focus on Section 1361.

There is a substantial question whether Section 205(h) of the Social Security Act shuts off all bases of judicial review of Title II claims other than those supplied by the Act itself. Although *Salfi* did not expressly resolve the issue,[83] we believe that such a bar derives naturally from *Salfi*, at least when the Act's review procedures do allow judicial consideration of the particular action. Section 205(h)'s restraints are imposed upon Medicare claims,[84] and because Section 1395*oo* of the Medicare Act plainly authorized review of the action here,[85] we hold that appellant may not rely

upon the mandamus statute as a predicate for federal-court jurisdiction.

Both the language of Section 205(h) and the reasoning in *Salfi* make clear that section's function to channel actions through available statutory review procedures. To the extent presently relevant, Section 205(h) provides:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 [86] to recover on any claim arising under this subchapter.

In light of these prohibitions, the *Salfi* Court held that Section 205(h) required that the constitutional challenges there ad-

---

to disturb the determinations of administrative officers only in clear cases of illegality. *Haneke v. Secretary of HEW, supra*, 175 U.S.App. D.C. at 334 & n. 15, 535 F.2d at 1296 & n. 15; *Cartier v. Secretary of State, supra*, 165 U.S. App.D.C. at 138 n. 8, 506 F.2d at 199 n. 8. The writ generally is denied when alternative remedies are available, whether judicial or administrative. *Haneke v. Secretary of HEW, supra*, 175 U.S.App.D.C. at 334 n. 15, 535 F.2d at 1296 n. 15; *Cartier v. Secretary of State, supra*, 165 U.S.App.D.C. at 138, n. 8, 506 F.2d at 199 n. 8; *Hammond v. Hull, supra*, 76 U.S.App.D.C. at 306, 131 F.2d at 25.

81. Complaint ¶ 2, J.App. 4.

82. *Zimmerman v. United States*, 422 F.2d 326, 330 (3d Cir.), *cert. denied*, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970); *Smith v. United States*, 502 F.2d 512, 519–520 (5th Cir. 1974); *Hazelwood Chronic & Convalescent Hosp., Inc. v. Weinberger, supra* note 64, 543 F.2d at 705–706.

83. In *Mathews v. Eldridge, supra* note 70, 424 U.S. at 332 n. 12, 96 S.Ct. at 901 n. 12, 47 L.Ed.2d at 31 n. 12, the Court implicitly acknowledged that the question whether § 205(g) is an exclusive avenue of review was not incontestably foreclosed at that time:

> Given our conclusion that jurisdiction in the District Court was proper under § [2]05(g), we find it unnecessary to consider Eldridge's contention that notwithstanding § [2]05(h) there was jurisdiction over his claim under the mandamus statute, 28 U.S.C. § 1361, or the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

Similarly, in *Norton v. Mathews*, 427 U.S. 524, 529–530, 96 S.Ct. 2771, 2774, 49 L.Ed.2d 672, 676–677 (1976), the Court acknowledged that the question whether, in light of § 205(h), relief was available under § 1361 or under § 10 of the Administrative Procedure Act was a "difficult and perhaps close jurisdictional" issue, which the Court did not have to resolve in that case.

In *Califano v. Sanders, supra* note 28, the Court reached and decided in the negative the question whether § 10 constituted an independent source of federal-court jurisdiction, without commenting on whether § 10 would be available notwithstanding § 205(h) even if § 10 were a jurisdictional base. Justice Stewart, however, argued in a concurring opinion, joined by Chief Justice Burger, that,

> [a]lthough the apparent literal meaning of statutory language is not an unfailing guide to the meaning of a congressional enactment, I can see no reason in this case why the second sentence of § 205(h) should not be read to mean exactly what it says—that the decision before us is reviewable under § 205(g) or not at all.

430 U.S. at 110, 97 S.Ct. at 987, 51 L.Ed.2d at 202–203 (concurring opinion). The concurring Justices concluded that "§ 205(h) specifically and unequivocally limits Sanders and others in his position to whatever jurisdiction is provided under § 205(g)." *Id.* at 111, 97 S.Ct. at 987, 51 L.Ed.2d at 203.

84. See text *supra* at notes 41–43.

85. See text *supra* at notes 77–78.

86. See note 38 *supra* and accompanying text.

vanced "be brought under jurisdictional grants contained in the Act," [87] and that "[o]ther sources of jurisdiction [were] foreclosed by § [2]05(h)." [88] The Court dismissed the claims of unnamed members of the plaintiff class who had not exhausted administrative remedies,[89] without consideration of possible alternative jurisdictional bases, even though Section 10 of the Administrative Procedure Act and Section 1361 were also asserted as grounds for jurisdiction in that case.[90]

Surely if constitutional litigation in the general Social Security area must proceed, not in the federal courts pursuant to Section 1331, but according to the course of review authorized by the Social Security Act, actions alleging no more than a violation of a *statutory* obligation—and hence normally amenable to mandamus review [91] —may not fairly be excused from the administrative process prescribed. Congress could not have intended that an agency be given the opportunity to hear claims ultimately presenting constitutional contentions beyond its power to resolve, but not challenges to its own regulations and prac-

tices no less susceptible to some amount of administrative investigation and resolution, and perhaps even satisfiable in the course of internal review.[92]

To be sure, Section 205(h) in terms identifies only "section 41 of Title 48[28]" as a forbidden source of jurisdiction,[93] and the mandamus provision was never part of Section 41.[94] But, at the time Section 205(h) was enacted into law, Section 41 encompassed all possible sources of federal-court jurisdiction over issues of the type presented herein.[95] We remain convinced, therefore, that Section 205(h) is a ban on jurisdiction by way of federal mandamus in a case, such as this, in which statutory procedures authorize review of the particular action.

We find support for our decision in the reasoning of several other courts of appeals. Despite Section 205(h) and the broad language in *Salfi*,[96] jurisdiction on grounds other than Section 1331 has been recognized, albeit cautiously, when *no* provision for review of the particular claims was made in the Act.[97] The courts generally

**87.** 422 U.S. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537.

**88.** *Id.* at 764, 95 S.Ct. at 2466, 45 L.Ed.2d at 538.

**89.** *Id.*

**90.** Complaint ¶ 1, *Weinberger v. Salfi, supra* note 40; Brief for Appellees at 42, *Weinberger v. Salfi, supra* note 40; see *Califano v. Sanders, supra* note 28, 430 U.S. at 110, 97 S.Ct. at 987, 51 L.Ed.2d at 203 (Stewart, J., with whom Burger, C. J., joins concurring).

**91.** See note 80 *supra*.

**92.** Section 1395*oo* (f)(1), quoted *supra* note 60, contemplates possible review of Board determinations by the Secretary, who has the power to reconsider his interpretation of the governing statute. See *Aristocrat South, Inc. v. Mathews, supra* note 64, 420 F.Supp. at 25–27. See also 20 C.F.R. § 405.1875 (1977).

**93.** See text *supra* at note 86.

**94.** The mandamus provision, 28 U.S.C. § 1361 (1970), was not enacted until 1962. Mandamus & Venue Act of 1962, Pub.L.No. 87–748, § 1(a), Oct. 5, 1962, 76 Stat. 744. See generally note 80 *supra*.

**95.** See 28 U.S.C. § 41(1) (1940). Congress, however, has specifically amended another review-limiting statute to encompass § 1361 when preclusion of mandamus jurisdiction was intended. See Veterans' Benefits Amendments of Aug. 12, 1970, Pub.L.No. 91–376, § 8(a), 84 Stat. 790, 38 U.S.C. § 211(a) (1970), *amending* Act of Sept. 2, 1958, Pub.L.No. 85–857, 72 Stat. 1115, 38 U.S.C. § 211(a) (1958). We realize, therefore, that reference to the statutory scheme extant when § 205(h) was enacted may not alone establish that mandamus jurisdiction is barred by that section. See *Hazelwood Chronic & Convalescent Hosp., Inc. v. Weinberger, supra* note 64, 543 F.2d at 706 n. 5. What is clear, however, is that the absence of the grant of mandamus jurisdiction from § 41, the provision adverted to in § 205(h), cannot evidence a congressional intent to *permit* such jurisdiction.

**96.** See text *supra* at notes 87–88.

**97.** Before *Califano v. Sanders, supra* note 28, made clear that § 10 of the Administrative Procedure Act was not an independent source of subject-matter jurisdiction, some courts held that § 10 conferred jurisdiction for Social Security Act cases—notwithstanding *Salfi's* interpretation of § 205(h)—when review under

agree, however, that when review procedures applicable to the claim at issue are provided in the Social Security Act, substitute bases for jurisdiction are not to be allowed.[98] Indeed, to hold that the review provisions of Title II of the Social Security Act and those of the Medicare Act are not exclusive when applicable to the claims in dispute would be to ignore the clear implications of Section 205(h) as construed by the Supreme Court in *Salfi*.[99]

We realize that mandamus may become available in limited circumstances not involved here. Had appellant alleged undue delay or plain departure from statutory procedures, perhaps mandamus could have been employed to compel the Secretary to adhere to the requirements of Section 1395

*oo.* Such a result would not interfere with the Board's decision on the merits of a claim; it would simply ensure that consideration of the claim would be properly and indeed, expeditiously afforded.[100] Appellant very nearly brings its case within this area by alleging inherent unfairness of the exception procedures, but its attack remains essentially a challenge to the Secretary's Medicare regulation. Appellant has not suggested that it was denied reasonably prompt treatment of an exception claim,[101] nor that there is any deficiency in Board procedures that Section 1395oo expressly authorizes. Even assuming that the exception procedures are inadequate, appellant has not shown that it may not obtain a "final decision" by the Board, without pur-

---

§ 205(g) was not available. *Lejeune v. Mathews*, 526 F.2d 950, 953 n. 2 (5th Cir. 1976); see *Hunt v. Weinberger*, 527 F.2d 544, 546–547 (6th Cir. 1975) (action involving a challenge to the Secretary's refusal to reopen a denial of a claim, which was not reviewable under § 205(g), and not the merits of the claim itself); *Sanders v. Weinberger*, 522 F.2d 1167, 1171 (7th Cir. 1975), *rev'd, Califano v. Sanders, supra* note 28 (same as *Hunt, supra* ); *Ryan v. Shea*, 525 F.2d 268, 271–272 (10th Cir. 1975) (claimants could not obtain administrative review of a claim to pretermination hearing except in a post-termination proceeding).

Similarly, § 10 jurisdiction was recognized in Medicare cases when, but only when, review of provider-reimbursement disputes under § 1395 oo was unavailable. *Adams Nursing Hosp., Inc. v. Mathews*, 548 F.2d 1077, 1079 (1st Cir. 1977) (dispute arising prior to creation of the Board for review of such actions); *Hazelwood Chronic & Convalescent Home, Inc. v. Weinberger, supra* note 64, 543 F.2d at 705 (same as *Adams, supra* ); see *Gallo v. Mathews, supra* note 64, 538 F.2d at 1151 (provider-physician's action for Medicare funds and for an injunction preventing the Secretary from recouping funds allegedly overpaid under program was not otherwise reviewable).

The Second Circuit, in these circumstances, has held that jurisdiction lay in the Court of Claims under 28 U.S.C. § 1491 (1970) even though *Salfi* precluded federal-question jurisdiction in Medicare cases in which no review was authorized under the Medicare Act. *South Windsor Convalescent Home, Inc. v. Mathews, supra* note 64 (a decision prior to the amendment broadening judicial review under § 1395 oo (f), see note 68 *supra* ).

**98.** See cases cited note 97 *supra* ; *Ro Ane v. Mathews*, 538 F.2d 852, 854 (9th Cir. 1976) (*Salfi* lodges exclusive jurisdiction of claims

arising under the Social Security Act in the agency, subject to judicial review only as provided for in the Act; therefore mandamus would be wholly unwarranted when review procedures in the Act are available). See also *Aristrocrat South, Inc. v. Mathews, supra* note 64; *Morris v. Weinberger*, 401 F.Supp. 1071, 1084 (D.Md.1975) ("*Salfi* would appear to be an exercise in futility if plaintiff-claimants could circumvent the exhaustion requirements of section [2]05(h) simply by bringing suit under section 1361").

**99.** See cases cited note 98 *supra. Cf. Califano v. Sanders, supra* note 28, 430 U.S. at 106, 97 S.Ct. at 985, 51 L.Ed.2d at 200 (recognition of § 10 jurisdiction would circumvent § 205(h)'s limitation on federal-question jurisdiction).

**100.** *White v. Mathews*, 559 F.2d 852, 856 (2d Cir. 1977) (because district court was asked merely to require the agency to conduct its proceedings with reasonable speed, resort to mandamus leaves § 205(g) undisturbed as the exclusive avenue to judicial review for one seeking to challenge the merits of the denial of benefits under the Social Security Act); *cf. Elliott v. Weinberger, supra* note 55, 564 F.2d at 1226–1227 (due process claim for hearing prior to initiation of recoupment procedures); *Ryan v. Shea, supra* note 97, 525 F.2d at 272 (claim for pretermination hearing).

**101.** The District Court found that

[t]his action challenges the propriety of the Schedule itself and the propriety of its application to plaintiff's members. It does not concern any particular exception, application or reimbursement adjustment.

*Association of Am. Medical Colleges v. Weinberger, supra* note 2, at 11, J.App. 266.

suing the exception process on its claim for full reimbursement.

We conclude, then, that appellant has failed to demonstrate federal-court jurisdiction under any of the avenues considered. Resultantly, the District Court was without power to entertain appellant's action. The judgment appealed from is accordingly vacated, and the case is remanded for dismissal.

*So ordered.*