590 F.2d 1070
 191 U.S.App.D.C. 368
 HUMANA OF SOUTH CAROLINA, INC., doing business as
Coleman-Aimar Hospital, a Corporation, Appellee,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare, Appellant.
HUMANA OF SOUTH CAROLINA, INC., doing business as
Coleman-Aimar Hospital, Appellant,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare, Appellee.
 Nos. 76-1953, 76-2125.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 23, 1978.
Decided Sept. 18, 1978.
Rehearing Denied Dec. 29, 1978.
 
 Alfred G. Lowe, James C. Pyles, Attys., Dept. of Health, Ed. and Welfare, Baltimore, Md., with whom Rex E. Lee and Barbara Allen Babcock, Asst. U. S. Attys. Gen., Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellant in No. 76-1953 and appellee in No. 76-2125. Joseph Guerrieri, Asst. U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., entered appearances for appellant in No. 76-1953 and appellee in No. 76-2125.
 John M. Bray, Washington, D. C., with whom Joseph E. Casson and Marc L. Fleischaker, Washington, D. C., were on the brief, for appellee in No. 76-2125 and appellant in No. 76-1953.
 Before ROBINSON, ROBB and WILKEY, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 Humana of South Carolina, Inc., a proprietary hospital, asserts procedural, statutory and constitutional challenges to a regulation promulgated by the Secretary of Health, Education and Welfare limiting the rate of return on equity capital recoverable as a cost item by providers of services under the Medicare Act.[1] The District Court assumed jurisdiction, rejected Humana's procedural objection, ruled in its favor on the statutory ground and accordingly declined to reach its constitutional arguments.[2] We hold that the court lacked power to entertain the statutory contentions because Humana failed to pursue available administrative procedures furnishing the exclusive approach to judicial review of claims such as these. We affirm the District Court's disposition in all other respects.
 
 
 2
 * In 1965, Congress adopted the Medicare program to extend federal subsidization of medical care to the aged.[3] Hospital insurance coverage under Part A of the Medicare Act ordinarily is effected through cost-reimbursement directly to providers of services rather than to beneficiaries.[4] Generally, reimbursement is handled by private organizations acting as fiscal intermediaries pursuant to contract with the Secretary.[5] Amounts paid are dictated by the "reasonable cost" of covered services or the provider's "customary charge" therefor, whichever is less.[6]
 
 
 3
 As originally enacted, the Medicare legislation made no provision for a return on equity capital to proprietary facilities. By virtue of his authority to promulgate regulations governing payment of "reasonable cost(s),"[7] however, the Secretary undertook to afford a "bonus factor" an allowance of two percent above costs otherwise recoverable to all participating institutions.[8] In 1966, Congress amended the Act by adding Section 1395x(v)(1)(B), which expressly recognized return on equity capital to proprietary skilled nursing facilities.[9] In its report on the amending bill, the House Ways and Means Committee urged the Secretary to fashion regulations enabling a return for proprietary hospitals,[10] the rate therefor to be determined by resort to principles "comparable" to those underlying Section 1395x(v)(1)(B), which in terms related only to skilled nursing facilities.[11] The Secretary issued a regulation to that end, incorporating for proprietary hospitals the maximum rate authorized in Section 1395x(v)(1)(B) for nursing institutions.[12]
 
 
 4
 Humana commenced suit in May 1975, predicating jurisdiction on the federal questions presented,[13] the Administrative Procedure Act[14] and two other statutory provisions.[15] Its complaint sought an injunction against enforcement of the Secretary's return-on-equity regulation for proprietary hospitals, a declaration of the regulation's incompatibility with the governing statute, and retroactive corrective adjustments in amounts theretofore paid under the regulation. Humana alleged that reimbursement authorized by the regulation was so low as to contravene statutory principles mandating reimbursement of "reasonable costs"[16] and proscribing subsidization by non-Medicare patients of hospitalization costs[17] of Medicare beneficiaries. Inadequate reimbursement was said also to constitute a taking of property without just compensation in violation of the Fifth Amendment. Humana challenged the Secretary's regulation on procedural grounds as well, asserting that it had been promulgated without required adherence to procedures set forth in the Administrative Procedure Act.[18]
 
 
 5
 The District Court took jurisdiction of all counts.[19] It held that administrative prescriptions of the sort in issue are exempt from the procedural demands of the Administrative Procedure Act,[20] but that Humana had shown prima facie that the Secretary's regulation, in tying the maximum rate for proprietary hospitals to that statutorily set for proprietary skilled nursing facilities, operated to keep reimbursement[21] unreasonably low. The court granted a summary judgment for Humana on the statutory ground without reaching the constitutional contentions[22] and ordered the Secretary to conduct a study to determine a rate of return on equity capital for proprietary hospitals consonant with the principles undergirding the rate that Congress fixed for proprietary skilled nursing facilities.[23]
 
 
 6
 The Secretary appeals from the rulings on jurisdiction and statutory entitlement. In turn, Humana cross-appeals the determination on applicability of the Administrative Procedure Act to the contested regulation. We hold that the District Court lacked power to entertain Humana's substantive claims because of its failure to resort preliminarily to the administrative process erected by the Medicare Act. We reach a contrary conclusion in regard to Humana's procedural challenge, and on that issue we affirm the District Court on the merits.
 
 II
 
 7
 Jurisdiction of Humana's suit hangs on the interplay of several provisions of the Social Security Act. Section 205(h), directly applicable to Title II of the Act, ordains that the "findings and decisions of the Secretary after a hearing shall be binding" upon all participants therein.[24] It further specifies:
 
 
 8
 No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.[25]
 
 
 9
 In Weinberger v. Salfi,[26] the Supreme Court construed Section 205(h) to intercept jurisdiction under 28 U.S.C. § 1331(a) the successor to the Section mentioned[27] over a constitutional assault on a duration-of-relationship requirement of the Social Security Act limiting eligibility of surviving wives and step-children for Social Security disability insurance benefits.[28] The Court noted that the language of Section 205(h) is "sweeping and direct,"[29] precluding general federal-question jurisdiction under Section 1331(a) "irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions."[30] By operation of Section 205(h), the sole avenue to judicial review is that provided in Title II of the Social Security Act itself Section 205(g),[31] which exacts as a "jurisdictional prerequisite" a "final decision" of the Secretary.[32] Since that requirement, the Court added, is "something more than simply a codification of the judicially developed doctrine of exhaustion" it could "not be dispensed with merely by a judicial conclusion of futility."[33]
 
 
 10
 Section 205(h) and consequently Salfi has bearing on the litigation before us because it was incorporated into the Medicare Act by Section 1395ii "to the same extent . . . applicable . . . to (Title II)."[34] Section 205(g), however, was borrowed only for limited purposes not here pertinent;[35] the review procedure applicable to provider-reimbursement disputes is found in Section 1395Oo.[36] Under that provision, administrative review must be obtained before the Provider Reimbursement Review Board when a provider is displeased with the total amount of reimbursement approved by its fiscal intermediary.[37] Following a "final decision" by the Board or a "reversal, affirmance, or modification" thereof by the Secretary, a provider can press its claims in a federal court.[38]
 
 
 11
 In Association of American Medical Colleges v. Califano,[39] we construed Section 205(h), in light of Salfi, to foreclose jurisdiction under Section 1331(a) and to direct litigation through Section 1395Oo in a suit challenging an administrative regulation limiting allowable reimbursement as inconsistent with the statutory mandate to recompense "reasonable costs."[40] We further held that Section 205(h), in order to preserve the integrity of the statutory review process, shuts off all alternative routes to court "when the Act's review procedures . . . allow judicial consideration of the particular action."[41] In such cases, "before a suitor may obtain judicial consideration of a claim"[42] "seeking eventual realization of provider-cost reimbursement under the Medicare Act,"[43] "he must first present the claim to the Provider Reimbursement Review Board and obtain a 'final decision' by it."[44] Humana endeavors to distinguish the present case from our decision in American Medical Colleges on several grounds, each of which we consider in turn.
 
 III
 
 12
 * Humana first points out that the regulation it seeks to nullify was promulgated in 1966, and asserts that it has been responsible for inadequate cost-reimbursement since that time. Moreover, the Provider Reimbursement Review Board is an available forum only with respect to claims for accounting periods ending on or after June 30, 1973.[45] As Humana seeks readjustment of its cost allowances for periods both before and after the creation of the Review Board, it asserts that jurisdiction lies for the whole of its suit. Denial of jurisdiction over this litigation, so the argument goes, would leave Humana completely without remedy for its pre-1973 claims, and its constitutional contentions would thus never be judicially evaluated. This problem was not presented in American Medical Colleges, which concerned only periods within the Review Board's authority.
 
 
 13
 Several courts have addressed the questions of federal-court jurisdiction over Medicare actions arising before provision for effective judicial review following determinations by the Provider Reimbursement Review Board. These courts generally agree that the Supreme Court's approach to Section 1331(a) jurisdiction in Salfi was influenced by the availability there of judicial review under Section 205(g).[46] Accordingly, they have declined to construe Section 205(h) as barring all avenues to review of provider-reimbursement controversies prior to establishment of a statutory process culminating in judicial consideration of a provider's claims.[47] "That all decisions ultimately find a jurisdictional basis demonstrates," in the Seventh Circuit's view, "that there is little judicial quarrel with the proposition that, when constitutional questions are in issue, the courts generally will not read a statutory scheme as taking the extraordinary step of foreclosing jurisdiction unless Congress' intent to do so is manifested by clear and convincing evidence."[48] The existence of jurisdiction by some mode or another with respect to pre-1973 provider actions is also suggested by pertinent legislative history.[49]
 
 
 14
 But Humana's suit, unlike those just discussed, involves not only pre-1973 claims but also claims implicating periods susceptible to Review Board jurisdiction, and the same assertedly infirm regulation underlies each. The District Court assumed jurisdiction to adjudicate the validity of the Secretary's regulation without differentiating between its pre-1973 and post-1973 effects, and the remedy it afforded is wholly prospective.[50] We think that in permitting Humana to succeed in its broad-based legal assault on a reimbursement-limiting regulation without first resorting to the administrative process to the extent usable, the District Court sanctioned a circumvention of the congressional scheme. Whether or not Humana's pre-1973 claims for reimbursement were reviewable by a statutorily-specified route, its post-1973 claims certainly were. And as our decision in American Medical Colleges and, indirectly, the Supreme Court's in Salfi make clear, any grievance respecting the amount of cost reimbursement due a provider must first be submitted for any administrative processing available under the Act's procedures.[51]
 
 
 15
 To be sure, that may be a fruitless pursuit even with respect to accounting periods amenable to Review Board adjudication, let alone those preceding. But because the requirement is "something more than simply a codification of the judicially developed doctrine of exhaustion," as the Supreme Court instructs it may "not be dispensed with merely by a judicial conclusion of futility."[52] Congress has made the judgment that the Secretary in the first instance must decide whether any administrative relief is forthcoming, and the question grinds to a halt right there.
 
 
 16
 We do not mean to suggest that an administrative endeavor will necessarily turn out to be unrewarding. An unanticipated construction of a governing regulation by the Review Board, or a decision on grounds alternative to those advanced by the intermediary or provider,[53] might well defy appearances of inanity. Even an adverse determination might be instructive to a reviewing court.[54] And when, as here, operation of the same regulation is responsible for pre-1973 and post-1973 complaints alike, a determination on the latter may shed light on the former. Moreover, the Medicare provider-reimbursement deliberative process contemplates possible review by the Secretary of the Review Board's decision;[55] and, as the Secretary suggested at oral argument, he can discretionarily confer relief for periods antedating the Review Board's jurisdiction or otherwise unobtainable from that body.[56] Thus Humana's assertion of pre-1973 claims cannot excuse, in the circumstances of this case, its failure to resort to the Provider Reimbursement Review Board before institution of its suit in the District Court.[57]
 
 B
 
 17
 Humana asserts secondly that general federal-question jurisdiction extends to this case because its challenge is essentially procedural. As we have indicated, the District Court ordered the Secretary to undertake a study to ascertain a reasonable return on equity capital for proprietary hospitals,[58] but purported not to find the current level actually unreasonable.[59] In view of that, Humana maintains that this suit falls without the ambit of Section 205(h). Put another way, this supposedly is not an "action . . . brought . . . to recover on any claim" arising under the Medicare Act,[60] but one designed to compel the Secretary to give appropriate procedural consideration to the issue of allowable return on equity.
 
 
 18
 In addressing this contention, we think it necessary to separate Humana's statutory and constitutional arguments from its Administrative Procedure Act thesis.[61] The former are unmistakably directed at upsetting on the merits the Secretary's determination on an element of cost-reimbursement. As we have noted, the Secretary specified by regulation the maximum return on equity capital affordable to participating proprietary hospitals, based on his reading of the Medicare Act.[62] Humana has disputed the Secretary's view that the Act imposes a rigid constraint on return on equity when a proprietary hospital is involved, and has insisted that the Secretary's regulation affirmatively affronts the Act as a barrier to payment of reasonable costs, and as a virtual requirement that non-Medicare patients bear a portion of the cost of services extended to individuals protected by the Act.[63] Humana has contended additionally that should the statute be interpreted to authorize a return on equity capital in an amount no greater than that provided by the regulation, it would violate the Fifth Amendment.[64]
 
 
 19
 Humana's presentation to the District Court was designed to demonstrate that reimbursement obtained in the past compares unfavorably with the return on equity capital realized by comparable institutions resulting in adverse financial consequences and subsidization of Medicare beneficiaries by non-Medicare patients and that adherence to the statutory command to recompense reasonable costs would inexorably result in an appreciable hike in available return. Accepting Humana's statutory construction, and perceiving a prima facie case that past reimbursement was inadequate, the court ordered the Secretary to conduct a rulemaking proceeding to find an acceptable reimbursement level.[65] Accordingly, Humana's request for retroactive adjustments was deferred.[66] Humana's fundamental grievance, then, centers on the amount of cost-reimbursement representing a return on equity capital, a subject amenable to Review Board adjudication. That Humana solicited and obtained an order compelling the Secretary to engage in a full-dress redetermination of the allowable rate of reimbursement does not except this case from Section 205(h). Unquestionably, it is a challenge on the merits to the limitation on returns-on-equity reimbursement imposed by the Secretary's regulation.
 
 
 20
 In American Medical Colleges, appellants sought, among other things, mandamus to compel the Secretary to promulgate new regulations on cost-reimbursement, arguing that the Secretary, in promulgating the regulation on review, had failed to take into account all factors made relevant by statute.[67] We held that neither general federal-question nor mandamus jurisdiction supported the suit. We observed that "the 'sweeping and direct' language of Section 205(h) precludes Section 1331(a) jurisdiction of suits seeking eventual realization of provider-cost reimbursement under the Medicare Act."[68] Humana's statutory and constitutional claims rather obviously are of the same breed.[69]
 
 
 21
 Section 205(h), as applicable to the Medicare Act,[70] embodies a congressional determination that before suit can be brought to secure greater reimbursement, the Secretary must have an opportunity to evaluate the provider's grievance. Humana's statutory and constitutional claims were indisputably intended to supplant the Secretary's assessment of permissible cost-reimbursement with a judicial appraisal that, according to Humana, will undoubtedly ensure more abundant returns. That the District Court declined actually to order retroactive corrective adjustments, but instead directed an administrative redetermination of the acceptable level of reimbursement, cannot alter the essential character and objective of Humana's suit, nor the need for prior resort to the administrative process.[71] Truly this was an "action . . . brought . . . to recover on (a) claim" within the contemplation of Section 205(h), at least insofar as the statutory and constitutional grounds are concerned.
 
 C
 
 22
 We conclude, however, that Humana's Administrative Procedure Act claim is not intercepted by Section 205(h). In stark contrast to its statutory and constitutional contentions, its rulemaking challenge is not directed at establishing error in the Secretary's view of what limits on reimbursement Congress intended or at demonstrating a fundamental unreasonableness in benefit amounts. Rather, the gravamen of the procedural attack is simply that the Secretary failed to adhere to the methodology generally applicable to any rulemaking effort. As such, it falls outside the purview of Section 205(h).
 
 
 23
 We are mindful that Section 205(h) is "sweeping and direct" in its preclusion of federal-question jurisdiction.[72] But, in terms, it bars only actions brought "to recover on any claim" arising under the Medicare Act.[73] Suits questioning the constitutionality of statutory provisions limiting the availability of benefits are encompassed within that class,[74] as are statutory and constitutional assaults on regulations restricting reimbursement-amount.[75] We think, however, that when suit is brought simply to vindicate an interest in procedural regularity, Section 205(h) is not summoned into play.[76] Congress felt that before its own, or the Secretary's, assessment of what funds might permissibly be forthcoming should be contested in a federal court, administrative remedies ought to be first pursued, notwithstanding apparent futility of that course. Plainly, that purpose does not buttress a contention that processes mandated by the Administrative Procedure Act were improperly eschewed in promulgation of a rule.[77]
 
 
 24
 Nor do we believe that traditional exhaustion principles bar immediate adjudication of Humana's procedural claim, for it is elementary that "the exhaustion (doctrine) contemplates an efficacious administrative remedy."[78] Consideration by the Provider Reimbursement Review Board, confined as it is to disputes over the amount properly reimbursable,[79] is unavailable with respect to procedural contentions of the sort here advanced, and the Secretary has not adduced an alternative avenue of redress. Moreover, the Secretary has advised that he will not undertake to promulgate a replacement regulation unless judicially compelled to do so.[80] Thus, in all probability, Humana will not obtain full relief on its substantive claims which might assuage its procedural complaints by resort to the Review Board.[81]
 
 
 25
 Though Section 205(h) precludes a case-by-case determination of futility in circumstances in which it applies, we might take a less wooden approach when not so constrained.[82] The issue on Humana's cross-appeal has been decided by the District Court and developed fully by the parties. In light of the fact that it may not be submitted directly for administrative review, and lacking weighty considerations militating against present consideration,[83] we think judicial efficacy is best served if we address it now.
 
 IV
 
 26
 Humana contends, and the Secretary appears to concede, that the challenged return-on-equity regulation was not promulgated compliantly with the notice-and-comment requirements delineated in the Administrative Procedure Act. The controversy, rather, is whether the rulemaking in question was exempt from the strictures of the Act by virtue of the "benefits" exception in Section 553(a)(2). By that section, the notice-and-comment method is inapplicable "to the extent that there is involved . . . a matter relating to agency management or personnel or to public property, loans, grants, Benefits, or contracts."[84] The District Court agreed with the Secretary that this provision is broad enough to embrace the reimbursement rule that Humana seeks to nullify, and we are of the same view.
 
 
 27
 The salutary effect of the Act's public comment procedures cannot be gainsaid, so only reluctantly should courts recognize exemptions therefrom.[85] But even construed narrowly, Section 553(a)(2) cuts a wide swath through the safeguards generally imposed on agency action.[86] Its literal reach is circumscribed somewhat by relevant legislative history,[87] but nonetheless a broad domain is preserved for its operation. More specifically, "to the extent that" any one of the enumerated categories is "clearly and directly" involved in the regulatory effort at issue, the Act's procedural compulsions are suspended.[88] That the governmental function is not strictly "proprietary," or the regulation's character is not "mechanical," does not curtail Section 553(a)(2)'s permissive effect.[89] Public policy may be sorely affected, and the wisdom of public input manifest, but the statutory exemption still prevails when "grants," "benefits" or other named subjects are "clearly and directly" implicated.[90]
 
 
 28
 Brief review of the schematics of the Medicare Act relative to provider cost-reimbursement evidences the applicability of Section 552(a)(3) in accordance with the foregoing principles. The Medicare program has as an essential objective alleviation of the financial burdens associated with medical needs borne by the aged and the disabled.[91] To effectuate that goal, federal subsidization of indispensable health services may be forthcoming in one of two ways. The first and least common mode is program-reimbursement of medical payments actually made by eligible beneficiaries.[92] The alternative method is extension of Medicare funds directly to providers of services on behalf of patients participating in the program.[93]
 
 
 29
 Regulations governing the amount of reimbursement allocable to providers, then, plainly implicate administration of Medicare funds. The extent to which providers incidentally benefit from participation in the program may be somewhat uncertain.[94] But, as the District Court observed, rules "establishing a reimbursement formula for payments to organizations in order that they actually deliver . . . benefits (to subscribing patients) can only be viewed as 'relating to' those benefits.[95] To this we might add our own conviction that the nexus is "clear( ) and direct( )."[96]
 
 
 30
 Humana contends, however, that the situation of a provider is closer to that of firms in regulated industries, which generally are afforded an opportunity to participate in rulemaking, than to aid-beneficiaries, who indisputably are affected by the benefits exemption.[97] Humana makes much of the fact that providers themselves are not recipients of gratuitous benefits, but of compensation for services performed.[98] And though participation in the Medicare hospitalization-insurance program must be initiated by the hospital,[99] Humana maintains that as a practical matter such organizations have little choice but to seek certification as a "provider of services."[100]
 
 
 31
 That providers are not afforded governmental assistance in the strict sense has little bearing on the applicability of Section 553(a)(2). Certainly a provider's interest in reimbursement is of no greater magnitude than a beneficiary's concern for program funding, and the citizenry is affected no more substantially by rules implicating one rather than the other. Nor does the record indicate that providers participate significantly less willingly in the Medicare program than do beneficiaries. "Realistically, the conditions imposed on (all) recipients of . . . grants, benefits, or public contracts . . . frequently cannot be avoided" for "in the world as it actually is, most people are in no position to refuse the 'privilege' to which the strings are attached."[101] Thus neither the impact of the reimbursement regulation on Humana nor the public interest more generally implicated by its promulgation distinguishes the present regulation from others concededly encompassed by Section 553(a)(2). In all cases in which the excepted subject matter is "clearly and directly" involved, the congressional aim was to afford agencies procedural latitude regardless of the interest of affected parties and the public generally in contributing to formulation of the exempted rule.[102]
 
 
 32
 Cognizant of the prudence, however, of allowing public input in the wide variety of rulemaking covered by Section 553(a)(2), the Secretary in 1971 elected to waive the exemption and to submit to the normal requirements of the Administrative Procedure Act,[103] and regulations promulgated since that time are subject to mandatory rulemaking procedures.[104] But the regulation challenged in the instant case was issued in 1966, and consequently was not dependent for its effectiveness upon the Secretary's adherence to the Act's commands. Humana's procedural challenge therefore cannot prevail.
 
 V
 
 33
 We conclude that the District Court correctly resolved the jurisdictional and constructural issues imposed by Humana's procedural attack. We hold, however, that the District Court lacked jurisdiction to hear Humana's statutory and constitutional objections to the Secretary's determination respecting return on equity capital allowable to proprietary hospitals. Before litigating these issues in a federal court, Humana must first resort to the administrative process set forth in Section 1395Oo.[105]
 
 
 34
 Humana has expressed concern that dismissal of its suit pending administrative review could prejudice its pre-1973 reimbursement claims because the Secretary might endeavor to prevent their reassertion on statute-of-limitations grounds.[106] We see no need for anxiety on that score. Our holding today is simply that Humana may not maintain its suit as framed in the District Court, nor obtain relief not limited to remediation for periods prior to 1973, without first pursuing available statutory procedures. We thus have not passed directly upon the District Court's jurisdiction over Humana's pre-1973 claims in isolation, and until it becomes clear that judicial power over them is lacking a dismissal of that aspect of the suit would be improper. Accordingly, the District Court should retain Humana's request for an order mandating retroactive corrective adjustments for accounting periods predating the years amenable to Provider Reimbursement Review Board jurisdiction, but pretermit any determination of its own jurisdiction with respect to those claims standing alone. At such time as Humana has satisfied the jurisdictional prerequisites to its post-1973 claims, the District Court can, if necessary, undertake to assess its authority to order adjustments for the earlier years.
 
 
 35
 Affirmed in part, reversed in part and remanded.
 
 
 
 [1]
 Health Insurance for the Aged (Medicare) Act, adopted as part of the Social Security Act of 1965, Pub.L.No.89-97, 79 Stat. 291, and codified, As amended, at 42 U.S.C. § 1395 Et seq. (1970 & Supp. V 1975). Later amendments are immaterial to this appeal
 
 
 [2]
 Humana of S. C., Inc. v. Mathews, 419 F.Supp. 253 (D.D.C.1976)
 
 
 [3]
 The Act was subsequently amended to extend coverage to certain disabled individuals under the age of 65. Pub.L.No.92-603, tit. II, § 201, 86 Stat. 1370 (1972)
 
 
 [4]
 See 42 U.S.C. § 1395f (1970 & Supp. V 1975), As amended by Pub.L.No.94-437, tit. IV, § 401(a), 90 Stat. 1408 (1976); Id. § 1395cc
 
 
 [5]
 42 U.S.C. § 1395h(a) (Supp. V 1975)
 
 
 [6]
 42 U.S.C. § 1395f(b) (Supp. V 1975)
 
 
 [7]
 See 42 U.S.C. § 1395x(v)(1)(A) (Supp. V 1975); 42 U.S.C. § 1302 (1970)
 
 
 [8]
 31 Fed.Reg. 7864 (1966)
 
 
 [9]
 Pub.L.No.89-713, § 7, 80 Stat. 1111 (1966)
 
 
 [10]
 H.R.Rep.No.2317, 89th Cong., 2d Sess. 3 (1966)
 
 
 [11]
 Id
 
 
 [12]
 20 C.F.R. § 405.429(a) (1966)
 
 
 [13]
 See 28 U.S.C. § 1331(a) (1970), As amended, by Pub.L.No.94-574, § 2, 90 Stat. 2721 (1976)
 
 
 [14]
 5 U.S.C. § 701 Et seq. (1976). Subsequent to the District Court's decision herein, the Supreme Court held in Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) that the Administrative Procedure Act does not independently supply federal subject-matter jurisdiction
 
 
 [15]
 28 U.S.C. § 1361 (1970); D.C.Code § 11-501 (1973). Neither of these provisions had a role in the District Court's decision, nor do they in ours
 
 
 [16]
 See 42 U.S.C. § 1395f(b) (Supp. V 1975); Id. § 1395x(v)(1)(A)-(B)
 
 
 [17]
 42 U.S.C. § 1395x(v)(1)(A) (Supp. V 1975)
 
 
 [18]
 5 U.S.C. § 553 (1976)
 
 
 [19]
 Pursuant to 5 U.S.C. §§ 701-706 (1976) and 28 U.S.C. § 1331(a) (1970). Humana of S. C., Inc. v. Mathews, supra note 2, 419 F.Supp. at 256-260
 
 
 [20]
 Id. at 260
 
 
 [21]
 Id. at 262. The District Court did not rule, however, that the existing level of reimbursement was actually inadequate. Id
 
 
 [22]
 Id. at 262-263 & n. 6
 
 
 [23]
 Id. at 262-263
 
 
 [24]
 42 U.S.C. § 405(h) (1970)
 
 
 [25]
 Id
 
 
 [26]
 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)
 
 
 [27]
 See Reviser's note to 28 U.S.C. § 1331 (1970)
 
 
 [28]
 42 U.S.C. §§ 416(c)(5), (e)(2) (1970 & Supp. V 1975)
 
 
 [29]
 422 U.S. at 757, 95 S.Ct. at 2463, 45 L.Ed.2d at 534
 
 
 [30]
 Id. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 536
 
 
 [31]
 42 U.S.C. § 405(g) (1970), providing in part:
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within 60 days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . .
 
 
 [32]
 422 U.S. at 766, 95 S.Ct. at 2467, 45 L.Ed.2d at 539. See also note 27 Supra
 
 
 [33]
 Id
 
 
 [34]
 42 U.S.C. § 1395ii (Supp. V 1975)
 
 
 [35]
 See 42 U.S.C. § 1395ff(b) (1970 & Supp. V 1975); Id. § 1395pp(d) (Supp. V 1975)
 
 
 [36]
 42 U.S.C. § 1395Oo (Supp. V 1975), providing in part:
 (a) Establishment.
 Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board (hereinafter referred to as the "Board") which shall be established by the Secretary in accordance with subsection (h) of this section, if
 (1) such provider
 (A) is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due to the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report,
 (2) the amount in controversy is $10,000 or more, and
 (b) Appeals by groups.
 The provisions of subsection (a) of this section shall apply to any group of providers of services if each provider of services in such group would, upon the filing of an appeal (but without regard to the $10,000 limitation), be entitled to such a hearing, but only if the matters in controversy involve a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more.
 (f) Finality of decision; judicial review; jurisdiction; venue; interest on amount in controversy.
 (1) A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title.
 
 
 [37]
 Id. § 1395Oo (a)(1)(A)
 
 
 [38]
 Id. § 1395Oo (f)(1)
 
 
 [39]
 186 U.S.App.D.C. 270, 569 F.2d 101 (1977)
 
 
 [40]
 42 U.S.C. § 1395f(b) (Supp. V 1975); Id. § 1395x(v)(1)(A)
 
 
 [41]
 186 U.S.App.D.C. at 280, 569 F.2d at 111
 
 
 [42]
 Id. at 279, 569 F.2d at 110
 
 
 [43]
 Id. at 276, 569 F.2d at 107
 
 
 [44]
 Id. at 279, 569 F.2d at 110
 
 
 [45]
 Pub.L.No.93-484, § 3(b), 88 Stat. 1459 (1974)
 
 
 [46]
 See Adams Nursing Home, Inc. v. Mathews, 548 F.2d 1077 (1st Cir. 1977) (recognizing jurisdiction under the Administrative Procedure Act, prior to Califano v. Sanders, supra note 14, over provider-reimbursement dispute not reviewable by means of § 1395Oo ); South Windsor Convalescent Home, Inc. v. Mathews, 541 F.2d 910 (2d Cir. 1976) (holding that jurisdiction over provider-reimbursement dispute arising prior to broadening of § 1395Oo lies in the Court of Claims under 28 U.S.C. § 1491 (1970)); Dr. John T. MacDonald Foundation, Inc. v. Califano, 571 F.2d 328 (5th Cir. En banc 1978) (same as South Windsor, supra ); Trinity Memorial Hosp. v. Associated Hosp. Serv., Inc., 570 F.2d 660 (7th Cir. 1977) (same as South Windsor, supra ); Hazelwood Chronic & Convalescent Hosp., Inc. v. Weinberger, 543 F.2d 703 (9th Cir. 1976) (same as Adams, supra ), Vacated for reconsideration in light of Califano v. Sanders, 430 U.S. 952, 97 S.Ct. 1595, 51 L.Ed.2d 801 (1977)
 The Supreme Court's decision in Califano v. Sanders, supra note 14, does not conflict with this reading of Salfi. In Califano, the Court ruled that the Secretary's refusal to reopen a disallowed disability insurance claim was not reviewable by any route. There, however, the claimant had had an opportunity to seek judicial review, pursuant to § 205(g), of the Secretary's initial ineligibility determination; his failure to utilize in timely fashion available statutory review procedures was responsible for his inability to secure judicial consideration. The Court construed § 205(h) thusly:
 This section has been held to require the exhaustion of available administrative procedures, to foreclose jurisdiction under the general grant of federal-question jurisdiction, 28 U.S.C. § 1331, And to route review through § 205(g). See Weinberger v. Salfi . . ..
 430 U.S. at 103 n.3, 97 S.Ct. at 983-984 n.3, 51 L.Ed.2d at 198 n.3 (emphasis supplied).
 
 
 [47]
 See note 46 Supra
 
 
 [48]
 Trinity Memorial Hosp. v. Associated Hosp. Serv., Inc., supra note 46, 570 F.2d at 665. See also Association of Am. Medical Colleges v. Califano, supra note 39, 186 U.S.App.D.C. at 276 n.55, 569 F.2d at 107 n.55 and cases cited therein
 
 
 [49]
 The Secretary has insisted that provision of the § 1395Oo review mechanism for accounting periods ending on or after June 30, 1973, reflects a congressional intention to leave all claims arising before then unreviewable. The legislative history of § 1395Oo, however, is to the contrary. Section 1395Oo was first added to the Medicare Act in 1972, and became effective June 30, 1973. Pub.L.No.92-603, tit. II, § 243(a), 86 Stat. 1420 (1972), 42 U.S.C. § 1395Oo (Supp. III 1973). Judicial review under § 1395Oo as originally enacted was confined to decisions by the Secretary reversing or adversely modifying but not those affirming determinations by the Provider Reimbursement Review Board. See 42 U.S.C. § 1395Oo (f) (Supp. III 1973). Section 1395Oo was amended in 1974 to permit review of final decisions of the Board and of any affirmance, reversal or modification of any Board decision by the Secretary. Pub.L.No.93-484, § 3(a), 88 Stat. 1459 (1974). The amendment originated as a House Finance Committee change in H.R. 13631. The Committee explained:
 "Under present law, the provider has a right to judicial review of the (Board's) decision Only where the Secretary has caused a reversal or modification. The committee provision would give to providers of services the right to judicial review of any Provider Reimbursement Review Board decision, as well as any subsequent affirmations, modifications or reversals by the Secretary."
 S.Rep.No.93-1065, 93d Cong., 2d Sess. 3-4 (1974), U.S.Code Cong. & Admin.News 1974, pp. 5992, 5995 (emphasis in original). As reported from the Committee, the bill specified:
 Notwithstanding any other provision of law, section (1395Oo ) of the Social Security Act shall not be construed as affecting any right to judicial review which may otherwise be available under law to providers of services with respect to cost reports for accounting periods ending prior to June 30, 1973.
 
 
 [120]
 Cong.Rec. 28113 (1974). In that form, the bill passed the Senate. Id. at 28114. In conference, the quoted provision was amended to read:
 The amendment by subsection (a) (broadening § 1395Oo (f)) shall be applicable to cost reports of providers of services for accounting periods ending on or after June 30, 1973.
 
 
 [120]
 Cong.Rec. 35465 (1974). Representative Ullman, author of the substituted provision and a House Manager of the Conference Committee, announced that the change "makes a Technical modification in the effective date provisions of the Senate language to conform to the text of the original Provider Reimbursement Review Board provision in Public Law 92-603" (emphasis supplied). Compare 120 Cong.Rec. 35675 (1974) (Senator Long, Senate Manager of Conference Committee) ("a minor change designed to conform the wording of the effective date provision to the text of the original Provider Reimbursement Review Board provision in Public Law 92-603"). Thus the Conference provision was not designed to alter the House Finance Committee's intent that providers could resort to other available judicial remedies for claims springing up before June 30, 1973. Indeed, the Conference Report itself observed that "(t)he amendment (broadening § 1395Oo (f)) would specifically not apply to other judicial review avenues existing with respect to cost reports for periods prior to June 30, 1973." H.R.Rep.No.93-1407, 93d Cong., 2d Sess. 3 (1974). U.S.Code Cong. & Admin.News 1974, p. 5996. The Conference Committee version of H.R. 13631 ultimately emerged as § 1395Oo (f). See Pub.L.No.93-484, § 3(b), 88 Stat. 1459 (1974)
 
 
 [50]
 See note 21 Supra and text at notes 21-23
 
 
 [51]
 See text Supra at notes 39-44. Proceedings before the Provider Reimbursement Review Board may be influenced, of course, by the nature of the provider's claim. See Association of Am. Medical Colleges v. Califano, supra note 41, 186 U.S.App.D.C. at 279 & n.75, 569 F.2d at 110 & n.75. Indeed, the Review Board might conclude that no hearing is needed to evaluate a fiscal intermediary's reimbursement determination seemingly consistent with the Act and any governing regulations. Such action by the Review Board might constitute a "final decision" and a waiver of further exhaustion sufficing to permit consideration of the aggrieved provider's claims by a district court
 
 
 [52]
 Weinberger v. Salfi, supra note 26, 422 U.S. at 766, 95 S.Ct. at 2467, 45 L.Ed.2d at 539
 
 
 [53]
 See Id. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537; Association of Am. Medical Colleges v. Califano, supra note 41, 186 U.S.App.D.C. at 279, 569 F.2d at 110
 
 
 [54]
 Cf. St. Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283, 294 (8th Cir.), Cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976) (even if after resort to administrative process the Secretary rejects suitor's claim based on Medicare regulations, "judicial assessment of the merits of (an equal protection challenge) will be made substantially easier by the Secretary's authoritative construction of the regulations and articulation of their underlying rationale")
 
 
 [55]
 42 U.S.C. § 1395Oo (f)(1) (Supp. V 1975); see 20 C.F.R. § 405.1875 (1977)
 
 
 [56]
 See Association of Am. Medical Colleges v. Califano, supra note 41, 186 U.S.App.D.C. at 281 & n.92, 569 F.2d at 112 & n.92; Aristocrat South, Inc. v. Mathews, 420 F.Supp. 23, 25-27 (D.D.C.1976)
 
 
 [57]
 See Part V Infra, with respect to the procedure to be followed on remand in regard to the pre-1973 claims
 
 
 [58]
 See text Supra at note 23
 
 
 [59]
 Humana of S. C., Inc. v. Mathews, supra note 2, 419 F.Supp. at 262
 
 
 [60]
 42 U.S.C. § 405(h) (1970), quoted in text Supra at note 25
 
 
 [61]
 See Part III(c) Infra
 
 
 [62]
 See text Supra at notes 9-12
 
 
 [63]
 Complaint, J.App. 10
 
 
 [64]
 Complaint, J.App. 9
 
 
 [65]
 Humana of S. C., Inc. v. Mathews, supra note 2, 419 F.Supp. at 262
 
 
 [66]
 Id. at 262 n.7:
 Plaintiff has asked that the Court order the Secretary to compensate it retroactively. If the Secretary should determine that the current rate is inadequate, plaintiff's remedy for past inadequate aggregate payments lies in resort to the "retroactive corrective adjustment" procedures required by § 1395x(v)(1)(A)(ii).
 We might add, that "(u)pon determining that one of his cost reimbursement regulations produces inadequate . . . payments to providers, the Secretary has a statutory duty to make suitable retroactive corrective adjustments." Springdale Convalescent Center v. Mathews, 545 F.2d 943, 954 (5th Cir. 1977).
 
 
 [67]
 Association of Am. Medical Colleges v. Califano, Supra note 41, 186 U.S.App.D.C. at 273, 569 F.2d at 104
 
 
 [68]
 Id. at 276, 568 F.2d at 107, quoting Weinberger v. Salfi, supra note 26, 422 U.S. at 757, 95 S.Ct. at 2463, 45 L.Ed.2d at 534
 
 
 [69]
 Cf. Weinberger v. Salfi, supra note 26. There the appellees had sought declaratory and injunctive relief from application of an allegedly unconstitutional provision of the Social Security Act, in addition to an order compelling payment of benefits. Jurisdiction of the claims of unnamed members of the plaintiff class was denied in toto because there was no indication that those persons had obtained the requisite final decision by the Secretary. 422 U.S. at 764, 95 S.Ct. at 2466, 45 L.Ed.2d at 538. The dissent, contending that § 1331(a) jurisdiction extended to the unnamed class members' requests for declaratory and injunctive relief because a favorable decision would result in further administrative processing before the benefits actually would be forthcoming, 422 U.S. at 798-799, 95 S.Ct. at 2483, 45 L.Ed.2d at 557-558, was implicitly rejected
 
 
 [70]
 See text Supra at note 34
 
 
 [71]
 See text Supra at notes 53-56
 
 
 [72]
 See text Supra at note 29
 
 
 [73]
 See text Supra at note 25
 
 
 [74]
 Weinberger v. Salfi, supra note 26
 
 
 [75]
 See Part III(B) Supra ; Association of Am. Medical Colleges v. Califano, supra note 39
 
 
 [76]
 See St. Louis Univ. v. Blue Cross Hosp. Serv., supra note 54, 537 F.2d at 292 (§ 205(h) does not preclude district court's jurisdiction over due process claim which "ha(d) as its primary goal obtaining a constitutionally adequate hearing"); Elliott v. Weinberger, 564 F.2d 1219, 1226 (9th Cir. 1977) (jurisdiction assumed over procedural due process claim, the court noting that "(t)he distinction between due process questions divorced from a claim for benefits and questions relat(ing) to the merits of a benefits claim is a significant one, requiring considerably different treatment by the courts"); Ryan v. Shea, 525 F.2d 268, 272 (10th Cir. 1975) (Salfi does not control procedural claim unrelated to denial of benefits); Cf. Association of Am. Medical Colleges v. Califano, supra note 39, 186 U.S.App.D.C. at 282, 569 F.2d at 113 (§ 205(h) does not operate to deny jurisdiction over action "to compel the Secretary to adhere to the requirements of Section 1395Oo," as "(s)uch a result would not interfere with the Board's decision on the merits of a claim"). But see Trinity Memorial Hosp. v. Associated Hosp. Servs., Inc., supra note 46, 570 F.2d at 667 (disagreeing with St. Louis Univ., supra note 54). Salfi was applied by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), though the respondent had presented a procedural due process claim for a pre-determination hearing, but he had also requested temporary reinstatement of benefits as an inseparable part of the procedural claim, thus bringing the action within the literal reach of § 205(h)
 
 
 [77]
 We also doubt whether Humana's procedural claim "aris(es) under (the Medicare Act)" a prerequisite to application of § 205(h). It is not at all evident that the Medicare Act provides the "substantive basis" for Humana's contention that the Administrative Procedure Act mandates adherence to rulemaking methodology. Cf. Weinberger v. Salfi, supra note 26, 422 U.S. at 760-761, 95 S.Ct. at 2464, 45 L.Ed.2d at 536
 
 
 [78]
 Wallace v. Lynn, 165 U.S.App.D.C. 363, 367, 507 F.2d 1186, 1190 (1974), quoting Lodge 1858, AFGE v. Paine, 141 U.S.App.D.C. 152, 166, 436 F.2d 882, 896 (1970)
 
 
 [79]
 See 42 U.S.C. § 1395Oo (Supp. V 1975), partially quoted in note 36 Supra
 
 
 [80]
 Supplemental Memorandum for Appellant/Cross-Appellee at 12-13
 
 
 [81]
 Cf. Consumers Union of United States, Inc. v. Cost of Living Council, 491 F.2d 1396, 1400 (Emerg.Ct.App.), Cert. denied, 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761 (1974). See also note 105 Infra, discussing Humana's appeal to the Provider Reimbursement Review Board after entry of the District Court's judgment
 
 
 [82]
 See, E. g., McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Hillsborough Township v. Cromwell, 326 U.S. 620, 625, 66 S.Ct. 445, 449, 90 L.Ed. 358, 364 (1946); City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934); Cf. Mathews v. Eldridge, supra note 76, 424 U.S. at 330-332, 96 S.Ct. at 900-901, 47 L.Ed.2d at 30-31; Weinberger v. Salfi, supra note 26, 422 U.S. at 764-765, 95 S.Ct. at 2466-2467, 45 L.Ed.2d at 538-539
 
 
 [83]
 For example, Humana mounts no constitutional challenge to the Administrative Procedure Act's rulemaking exemptions, which might "constitute ( ) a strong reason for not allowing . . . suit . . . to anticipate . . . (agency action)." Wallace v. Lynn, supra note 78, 165 U.S.App.D.C. at 367, 507 F.2d at 1190, quoting Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 772, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796, 1808 (1947)
 
 
 [84]
 5 U.S.C. § 553(a)(2) (1976) (emphasis supplied)
 
 
 [85]
 See National Wildlife Fed'n v. Snow, 182 U.S.App.D.C. 229, 233, 561 F.2d 227, 231 (1976); Center for Auto Safety v. Tiemann, 414 F.Supp. 215, 221 (D.D.C.1976); Schwartz, Administrative Law 169-170 (1976); Bonfield, Public Participation in Federal Rulemaking Relating to Public Property, Loans, Grants, Benefits, or Contracts, 118 U.Pa.L.Rev. 540, 556 (1970)
 
 
 [86]
 See, E. g., authorities cited in note 85 Supra
 
 
 [87]
 S.Rep.No.752, 79th Cong., 1st Sess. (1945), in Legislative History of the Administrative Procedure Act 199, hereinafter cited "Legislative History" (exceptions apply only 'to the extent' that the excepted subjects are directly involved") H.R.Rep.No.1980, 79th Cong., 2d Sess. (1946), in Legislative History, Supra, at 257 (exceptions "apply only 'to the extent' that the excepted subject matter is clearly and directly involved"). Other pertinent legislative history is detailed in National Wildlife Fed'n v. Snow, supra note 85
 
 
 [88]
 See note 87 Supra
 
 
 [89]
 National Wildlife Fed'n v. Snow, supra note 85, 182 U.S.App.D.C. at 233-234, 561 F.2d at 231-232
 
 
 [90]
 Id
 
 
 [91]
 See generally S.Rep.No.1230, 92d Cong., 2d Sess. (1972); H.R.Rep.No.231, 92d Cong., 1st Sess. (1971) U.S.Code Cong. & Admin.News 1972, p. 4989; S.Rep.No.404, 89th Cong., 1st Sess. (1965); H.R.Rep.No.213, 89th Cong., 1st Sess. (1965), U.S.Code Cong. & Admin.News 1965, p. 1943; Rastetter v. Weinberger, 379 F.Supp. 170 (D.Ariz.), Aff'd, 419 U.S. 1098, 95 S.Ct. 767, 42 L.Ed.2d 795 (1974)
 
 
 [92]
 See 42 U.S.C. § 1395d (1970). See also text Supra at note 4
 
 
 [93]
 See note 4 Supra and accompanying text. Payment is made pursuant to a contractual arrangement between the provider and the Secretary. See 42 U.S.C. § 1395cc (1970)
 
 
 [94]
 The Secretary has suggested that participation in the Medicare program enhances the financial position of providers. Prior to inception of Medicare, we are told, many hospitals cared for the elderly on a charitable basis, or were unable to collect on bills incurred by the aged. See Reply Brief for Appellant/Cross-Appellee at 12; Black, "Hospital Costs and the Medicare Program," Social Security Bull. 35 (Aug. 1973). ("hospital revenues have risen slightly faster than expenses since the introduction of Medicare, and a fairly substantial increase in hospital net incomes has resulted")
 
 
 [95]
 Humana of S. C., Inc. v. Mathews, supra note 2, 419 F.Supp. at 260 n.5
 
 
 [96]
 See note 87 Supra and accompanying text
 
 
 [97]
 Compare Pharmaceutical Mfrs. Ass'n v. Finch, 307 F.Supp. 858 (D.Del.1970)
 
 
 [98]
 Humana's argument may simultaneously demonstrate applicability of the "contracts" exception. See text Supra at note 79. Humana of S. C., Inc. v. Mathews, supra note 2, 419 F.Supp. at 260 n.5; Bonfield, supra note 85, 118 U.Pa.L.Rev. at 568-570. As we hold that the "benefits" exemption applies to the challenged regulation, we do not consider the scope of the "contracts" proviso
 
 
 [99]
 See note 93 Supra
 
 
 [100]
 42 U.S.C. §§ 1395x(u), 1395cc (1970). See generally St. Francis Memorial Hosp. v. Weinberger, 413 F.Supp. 323, 330, 332 (N.D.Cal.1975)
 
 
 [101]
 Bonfield, supra note 85, 118 U.Pa.L.Rev. at 573-574. See also Reed v. Gardner, 261 F.Supp. 87 (C.D.Cal.1966); O'Neil, Unconstitutional Conditions: Welfare Benefits with Strings Attached, 54 Cal.L.Rev. 443 (1966)
 
 
 [102]
 See Rodriguez v. Swank, 318 F.Supp. 289, 296 (N.D.Ill.1970), Aff'd, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971) ("Congress might reasonably have concluded that greater flexibility in promulgation was needed in the area of grants-in-aid in order to provide for their expeditious administration"); Cf. Rainbow Valley Citrus Corp. v. Federal Crop Ins. Corp., 506 F.2d 467, 469 (9th Cir. 1974) (contract exemption). And see Bonfield, supra note 85:
 The "benefits" exclusion has a very broad scope and has been deemed to cover rulemaking relating to a great variety of programs. More specifically, this exception applies to rulemaking relating to pensions, medical care, and other similar services provided to veterans . . . and to all rulemaking relating to old age, survivors, disability, and health insurance payments made under the Social Security Act.
 
 
 [118]
 U.Pa.L.Rev. at 566, citing U. S. Dep't of Justice, Attorney General's Manual on the Administrative Procedure Act 28 (1947). In Opelika Nursing Home, Inc. v. Richardson, 356 F.Supp. 1338, 1340 (M.D.Ala.1973), Aff'd sub nom. on other grounds, Johnson's Professional Nursing Home v. Weinberger, 490 F.2d 841 (5th Cir. 1974), the court held that Medicaid reimbursement regulations were exempt from mandatory procedural requirements by operation of the grant exception
 
 
 [103]
 36 Fed.Reg. 2532 (1971). The measure was prompted by a recommendation of the Administrative Conference of the United States. See Recommendation No. 16 Elimination of Certain Exemptions from the APA Rulemaking Requirements, 118 U.Pa.L.Rev. 611 (1970)
 
 
 [104]
 See Rodway v. Department of Agriculture, 168 U.S.App.D.C. 387, 514 F.2d 809, 814 (1975); Florida v. Mathews, 422 F.Supp. 1231, 1250 (D.D.C.1976). See generally Service v. Dulles, 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403, 1418 (1957)
 
 
 [105]
 Developments since decision by the District Court may bear on exhaustion of Humana's claims. In July 1977, Humana, along with other proprietary hospitals, prosecuted a group appeal to the Review Board to contest return on equity capital allocated by the group's physical intermediary for the 1973 accounting period. Group Appeal of Humana, Inc., No. 76-197 C (PRRB Dec. 1, 1977), reproduced as Exhibit A in Supplemental Brief for Appellant/Cross-Appellee. Specifically, the hospitals complained that failure to treat income tax as a reimbursable cost, and inclusion of income tax in the equity computation, resulted in a return on equity capital at less than half the amount properly allowable. And the hospitals developed in the administrative record essentially the same data submitted to the District Court in the instant case with respect to the return realized by providers vis-a-vis comparable institutions. The Review Board implicitly recognized its authority to afford relief but ruled against the hospitals on the merits, construing the Medicare Act as sanctioning reimbursement in the amount afforded by the intermediary. Humana and the other petitioners have recently filed suit in the District Court challenging the same regulation at issue in the instant case. See Complaint, Humana, Inc. v. Califano, No. 78-0175 (D.D.C. filed Jan. 31, 1978), reproduced as Attachment A in Supplemental Brief for Appellant/Cross-Appellee. Therein they advance the same statutory, constitutional and procedural grounds urged in the present litigation, and request retroactive corrective adjustments "for the cost-reporting period ending August 31, 1973 and for all other Medicare reimbursements since the promulgation of the illegal regulation on November 22, 1966." Complaint Count II, P 27, at 31
 Thus Humana may well obtain, in the action recently commenced, judicial evaluation of its statutory and constitutional contentions in the manner prescribed by the Medicare Act. Indeed, the Secretary has opined that "Humana of South Carolina, by its new complaint has now properly presented jurisdiction in the federal district court under 42 U.S.C. § 1395Oo." Supplemental Brief for Appellant/Cross-Appellee at 2. We need not now decide whether presentation of claims for a single accounting period might supply jurisdiction to order relief for earlier periods when a regulation applicable to all is challenged. In any event, Humana perhaps may obtain at least the relief secured in the District Court in the case at bar.
 
 
 [106]
 See 28 U.S.C. § 2401(a) (1970)