NATIONAL MEDICAL ENTERPRISES, INC., and its wholly-owned Subsidiaries Which Provide Service Under the Medicare Program

v.

Otis BOWEN, M.D., Secretary of Health and Human Services.

Civ. A. No. 88–2203.

United States District Court, District of Columbia.

Aug. 15, 1989.

Patric Hooper and John R. Hellow, Hooper, Lundy & Bookman, Inc., Los Angeles, Cal., and Allen T. Eaton & Associates, David Smorodin, Washington, D.C., for plaintiffs.

Robert L. Roth, Dept. H & HS, Baltimore, Md., and Susanne M. Lee, Dept. H & HS, Washington, D.C., for defendants.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Defendant Otis Bowen ("the Secretary") has moved pursuant to Fed.R.Civ.Pro. 12(b)(1) to dismiss the underlying complaint for lack of subject matter jurisdiction. As demonstrated below, under the clear dictates of Supreme Court and D.C. Circuit caselaw interpreting the relevant statutory and regulatory framework, this court is divested of jurisdiction in this case until the plaintiffs have exhausted their administrative remedies under 42 U.S.C. § 1395*oo*. Accordingly, the court dismisses the underlying complaint.

### I

Plaintiff National Medical Enterprises, Inc. ("NME") is the parent company for various plaintiff subsidiary hospital corporations throughout the country. It is undisputed that plaintiff hospitals are certified providers of services under the Medicare Act. Defendant Otis Bowen, M.D. was the Secretary of Health and Human Services ("HHS") at the time the motion under consideration was filed. The plaintiffs filed their underlying complaint on

August 24, 1988, challenging what they termed the "retroactive application" of a regulation recently promulgated by the Secretary. Cmplt. ¶ 24.

## II

The Health Insurance for the Aged Act, popularly known as the Medicare Act ("the Act"), was originally enacted as part of the Social Security Act in 1965 to provide federal subsidies for medical care provided to the aged.[1] The Medicare Act consists of two parts, Part A and Part B. Part A, the portion of the Act at issue here, authorizes payments for the costs of inpatient hospital services and related post-hospital services. 42 U.S.C. §§ 1395c & d.[2]

Part A services are provided by "providers of services"—health care providers such as hospitals who enter into "provider agreements" with the Secretary of Health and Human Services. 42 U.S.C. §§ 1395x(u) & 1395cc. These part A "providers of services" are reimbursed through fiscal intermediaries designated by the individual provider and the Secretary.[3]

In response to the burgeoning costs of the Medicare program,[4] Congress enacted changes in the way providers were compensated under the Act. Instead of basing compensation on the provider's "reasonable costs" of covered services, a prospective payment system ("PPS") system was to be phased in. Under the PPS, Medicare will pay most Part A providers for inpatient operating costs on the basis of prospectively determined, standard national rates. These rates of compensation are based on one of approximately 468 different diagnosis related groups ("DRG"), a grouping that best characterizes the treatment provided to each Medicare patient based on the patient's diagnosis at discharge.

Under the PPS, after a Medicare patient has been discharged from a hospital/provider, the hospital/provider sends documentation to its fiscal intermediary to support a requested DRG. The intermediary evaluates the provided documentation and in turn notifies the hospital as to which DRG a patient was assigned. According to the Secretary's regulations, every patient discharged will be assigned to a particular DRG based on the patient's "age, sex, principal diagnosis ... secondary diagnoses, procedures performed, and discharge status." 42 C.F.R. § 412.60(c)(1) (1988). And, as noted by the plaintiffs, the DRG assigned to a given patient "dramatically affects the payment which a hospital receives for services provided under PPS." Pltf's Mem. in Opp. at 7.

The Secretary's regulations also allow a hospital/provider to request a review of an assigned DRG to a particular discharge and to support its request with additional documentation. 42 C.F.R. § 412.60(d). The fiscal intermediary reviews the DRG assignment and any additional information to determine "whether a change in the DRG assignment is appropriate." *Id.* § 412.60(d)(2). If the fiscal intermediary determines that a "higher-weighted DRG should be assigned, it must request the appropriate PRO [Peer Review Organization] to review the case to verify the change in DRG assignment...." *Id.*[5]

---

1. Pub.L.No. 89–97, 79 Stat. 291 (1965), *codified as amended* at 42 U.S.C. § 1395 *et seq.* (1982 & Supp. V 1987).

2. Part B of the Medicare Act, known formally as "Supplementary Medical Insurance Benefits for the Aged and Disabled," authorizes payments to physicians and for other non-hospital services. 42 U.S.C. §§ 1395j–1395*l*.

3. 42 U.S.C. § 1395h. The Secretary contracts with an intermediary to serve as his agent and perform various functions, including evaluating and paying hospital claims for compensation of services provided under the Act. 42 C.F.R. § 400.202.

4. According to the defendants, "[d]uring 1966, the first year of the Medicare program, trust fund outlays were $1.6 billion. By 1982, that figure had increased by 26–fold to $42.5 billion." Deft's Mem. in Supp. at 4 (footnote omitted).

5. A Peer Review Organization, officially known as a "Utilization and Quality Control Peer Review Organization," contracts with the Health Care Financing Administration ("HCFA") to review the health care services or items furnished or proposed to be furnished to Medicare beneficiaries. 42 C.F.R. § 400.200 (1988).

This DRG review procedure is the subject of the underlying dispute in this case.

## III

The regulation at issue here, codified at 42 C.F.R. § 412.60(d)(1), placed a formal, sixty day limitation on the ability of a provider to request a review of an assigned DRG code.[6] The preamble to the regulation indicated it was to be effective as of October 1, 1987. 52 Fed.Reg 33034, 33034 (Sept. 1, 1987).

According to the complaint, plaintiffs submitted a series of requests for review of assigned DRGs to their respective fiscal intermediaries on November 24, 1987. Cmplt. ¶ 19. These requests, filed within 60 days of the regulation's effective date, were for changes in DRG codes which were originally assigned, in "virtually every case," more than sixty days previously.[7] These requests were all subsequently denied by the respective fiscal intermediaries, many of whom referred to the sixty day limitation contained in the regulation.[8]

Plaintiffs argue that by these actions the fiscal intermediaries are attempting to apply the new regulation retroactively, an action alleged to be impermissible under a variety of legal theories including the Administrative Procedures Act and "due process of law."[9] Accordingly, plaintiffs seek a declaration by the court that the new regulation does not bar consideration of their requests for DRG recoding filed on November 24, 1987, and an order requiring the intermediaries to consider these requests.[10] The plaintiffs rely on 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (mandamus against a federal official), and 28 U.S.C. § 1651 (the "All Writs Act") to establish subject matter jurisdiction in this court.[11]

## IV

The crucial decision for this court in resolving this motion is the characterization of the plaintiffs' underlying claims. In response to the complaint, the Secretary has filed the current motion to dismiss for lack

6. The portion of the regulation at issue reads: (d) *Review of DRG assignment.* (1) A hospital has 60 days after the date of the notice of the initial assignment of a discharge to a DRG to request a review of that assignment. The hospital may submit additional information as a part of its request.
42 C.F.R. § 412.60(d)(1).

7. Cmplt. ¶ 20. As noted by the Secretary, plaintiffs fail to provide any additional information about these claims, other than the relatively cryptic passage that they were limited to "correcting seven DRG codes, DRG codes 89, 122, 125, 140, 143, 182, 243, for which the highest error rates were noted." *Id.* ¶ 19. Although unexplained in the pleadings, counsel for plaintiffs indicated at oral argument that these error rates were discovered in a study performed by an accounting firm for the plaintiffs.

8. Cmplt. ¶ 21(b). The complaint also alleges that some fiscal intermediaries denied the requests by informing plaintiff that they should be submitted to the appropriate Peer Review Organization ("PRO"). *Id.* While this portion of the complaint is not directly addressed by defendant's pleadings, because it too is "inextricably intertwined" with a request for additional compensation under the Act, the court rules that section 405(h) bars the exercise of subject matter jurisdiction at this time.

9. Cmplt. ¶ 24. Specifically, the plaintiffs argue that this retroactive regulation is "arbitrary and capricious" under the Administrative Procedures Act, 5 U.S.C. § 706; inconsistent with 5 U.S.C. § 553 which define agency regulations as rules of future effect; and inconsistent with due process of law. *Id.* The Secretary contends that the sixty day limit has been in existence in HCFA policy manuals since April 23, 1984. Deft's Mem. in Supp. at 9. The court need not resolve this dispute to decide the Secretary's motion to dismiss.

10. Cmplt. Requested Relief ¶¶ 2–3. Plaintiffs also seek an order declaring that requests for review of DRG assignments must be submitted initially to the Medicare fiscal intermediary, and awards of attorneys' fees, costs and for "such other and further relief as the Court may deem proper." *Id.* ¶¶ 1, 4–6.

11. In their opposition to the defendant's motion to dismiss for lack of subject matter jurisdiction, the plaintiffs specifically defend their assertions concerning jurisdiction under 28 U.S.C. §§ 1331 & 1361. However, they fail to provide any support for their assertion that subject matter jurisdiction exists in this court under the All Writs Act, 28 U.S.C. § 1651. Accordingly, the court will deem this assertion waived by the plaintiffs for the purposes of deciding the motion to dismiss. *See* Deft's Mem. in Supp. at 22 n. 6 (uncontested assertions challenging subject matter jurisdiction under 28 U.S.C. § 1651).

of subject matter jurisdiction. The Secretary classifies the plaintiffs' claims essentially as seeking relief for "dissatisfaction with a final determination of the Secretary as to the amount of payment" under the Act. Deft's Mem. in Supp. at 16.

Under this characterization, the Secretary argues that section 405(h) of the Social Security Act, incorporated into the Medicare Act by 42 U.S.C. § 1395ii, precludes this court from jurisdiction under 28 U.S.C. § 1331. Specifically, section 405(h) explicitly provides that:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 ... of Title 28 to recover on any claim arising under this subchapter....

42 U.S.C. § 405(h). Under this "sweeping and direct" statutory command, the Secretary argues that Congress has "unambiguously restricted judicial review of claims for reimbursement" to those provided by the Act itself.[12]

Those judicial review provisions for claims by Medicare providers involve 42 U.S.C. § 1395oo. The section creates a Provider Reimbursement Review Board ("PRRB") with authority to hold hearings involving providers of Part A services who are "dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter...." *Id.* § 1395oo(a)(1)(A)(i).

Judicial review of PRRB decisions is also permitted:

> (1) A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.

*Id.* § 1395oo(f). Thus, according to the Secretary, section 405(f) requires that plaintiffs' claims must first be presented to the PRRB before any district court can review them. The Secretary argues further that section 405(f) expressly precludes subject matter jurisdiction in this court under either 28 U.S.C. §§ 1331 or 1361.

Plaintiffs, on the other hand, flatly assert that "[t]his lawsuit has *nothing to do with* determining the amount of reimbursement owing the hospitals" under the Act. Pltf's Mem. in Opp. at 1 (emphasis in original). They characterize the issues involved here as collateral "to the amount of reimbursement claimed since they relate to the process for correcting DRG codes rather than the amount of payments." *Id.* at 17. And, given the collateral nature of their claim, plaintiffs argue that the PRRB does not have jurisdiction to resolve this dispute. *Id.* at 2.

Because the PRRB has no jurisdiction over their claim, plaintiffs argue that there are no administrative remedies to exhaust under the Act. *Id.* at 17. This lack of administrative remedies does not, however, forestall judicial review of their claims under section 405(h) of the Act. Plaintiffs

---

12. Deft's Mem. in Supp. at 11 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The court notes at this juncture that the Secretary does not here argue that the plaintiffs are entitled to *no* judicial review of their claims under section 405(h). The Secretary instead asserts that plaintiffs must exhaust the Act's administrative remedies before seeking judicial review. This argument therefore avoids the need to find "specific language or specific legislative history that is a reliable indicator of congressional intent ... to preclude judicial review [of any kind]," *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 673, 106 S.Ct. 2133, 2137, 90 L.Ed.2d 623 (1986), that is required to overcome "the strong presumption that Congress intends judicial review of administrative action." *Id.* at 670, 106 S.Ct. at 2135.

instead attempt to demonstrate a clear Congressional intent that envisioned review of errors in DRG coding and argue, accordingly, that section 405(h) does not apply to their claims. *Id.*

To bolster their argument as to the collateral nature of their claims, plaintiffs note that "[b]y its express terms, § 405(h) pertains to findings of fact and decisions based thereon." *Id.* at 21. Because there would be no administrative hearing and thus no findings of fact by the Secretary in this matter, they argue that section 405(h) is inapplicable to this dispute. *Id.* at 9–12.

The Secretary in turn challenges plaintiffs' characterization of the claims at issue here as "collateral" or "procedural." He instead argues that if this court were to grant the relief requested by the plaintiffs, only "ministerial details" would remain before the plaintiffs would receive payment.[13] In addition, the Secretary argues that the Medicare Act does provide for administrative and judicial review of the plaintiffs' claims. The Secretary points to a recent addition to section 1395oo, which reads:

> Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which such a determination is rendered.... The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary.

42 U.S.C. § 1395oo(f). The Secretary argues that under this provision challenges to regulations concerning payment must also be channelled through the administrative procedures provided under the Medicare Act.

## V

In resolving this dispute in the Secretary's favor, the court is bound by similar characterizations in recent Supreme Court and D.C. Circuit decisions. In these cases involving claims under Part A of the Medicare Act, the reviewing courts rejected proposed distinctions between "procedural" and "substantive" challenges to the Secretary's actions and required the exhaustion of administrative remedies for any claim that essentially sought additional reimbursement under the Act. Because the court finds that the plaintiffs's characterization of its claims as collateral (as opposed to procedural) to be only a slight but inconsequential distinction of the arguments rejected in these other cases, the court dismisses the underlying complaint for lack of subject matter jurisdiction.

In *Heckler v. Ringer*, 466 U.S. 602, 611, 104 S.Ct. 2013, 2019, 80 L.Ed.2d 622 (1984), the Supreme Court rejected a distinction between "procedural" and "substantive" challenges to the Secretary's actions under Part A of the Medicare Act. The Court ruled that the claims of a group of beneficiaries challenging the Secretary's action denying Medicare coverage for bilateral carotid body resection ("BCBR") surgery had to be initially channeled through the administrative procedures provided under the Act. *Id.* at 614–15, 104 S.Ct. at 2021–22.

In their complaint, the beneficiaries asserted that the Secretary's actions denying coverage of the BCBR surgery violated a series of provisions, including the Administrative Procedures Act and the due process clause of the Fifth Amendment. *Id.* at 610 n. 7, 104 S.Ct. at 2019 n. 7. The complaint sought a declaratory judgment that the Secretary's actions denying coverage were unlawful under the Act, an injunction compelling the Secretary to provide payment for BCBR claims, and an injunction preventing the Secretary from forcing benefi-

---

**13.** Deft's Reply Mem. at 8. According to the Secretary, these details include "only running the requests through a computer program and making sure that the services were actually rendered and medically necessary. *Id.* at 8 n. 8.

ciaries to resort to the administrative process to obtain payment. *Id.* at 610–11, 104 S.Ct. at 2019–20. By specifically excluding a claim for a remedial award of benefits, the beneficiaries characterized at least some of their claims as essentially procedural—i.e. complaining that the Secretary's procedures were invalid—and hence exempt from the administrative appeals process which was restricted to disputes over the *size* of benefit awards.[14]

The Supreme Court disagreed with this characterization and reversed the Ninth Circuit's conclusion that "to the extent the respondents claims [we]re seeking to invalidate the Secretary's *procedure* for determining entitlement to benefits, those claims [we]re cognizable under the federal question statute, 28 U.S.C. § 1331...." *Id.* at 612, 104 S.Ct. at 2020. The Court concluded that it made "no sense" to construe the claims of the beneficiaries "as anything more than, at bottom, a claim that they should be paid for their BCBR surgery." *Id.* at 614, 104 S.Ct. at 2021.

While conceding that the beneficiaries did raise a number of procedural objections to the Secretary's actions in denying benefits, the Court agreed with the conclusion of the district court that those procedural claims were "inextricably intertwined with respondents' claims for benefits." *Id.* The Court confirmed this characterization by noting that "the relief the respondents seek to redress their supposed 'procedural' objections is the invalidation of the Secretary's policy and a 'substantive' declaration

from her that the expenses of BCBR surgery are reimbursable under the Medicare Act."[15]

■ Following the Supreme Court's reasoning in *Ringer*, this court simply cannot accept the plaintiffs' contention that this proceeding is detached from their ultimate claims seeking higher compensation for services provided. Regardless of the spin the plaintiffs seek to cast on this proceeding, this court finds that their claims here are "inextricably intertwined" with their ultimate claims for additional reimbursement under the Act. Specifically, there can be little real question that the ultimate redress the plaintiffs seek here to relieve their procedural objections, similarly to the plaintiffs in *Ringer*, is the reversing of the alleged coding errors and the receipt of additional compensation resulting therefrom.[16] Therefore, under *Ringer*, the court finds that section 405(h) precludes the exercise of subject matter jurisdiction under 28 U.S.C. § 1331.

This conclusion is bolstered by two rulings of the D.C. Circuit in cases involving challenges brought by Part A Medicare providers to actions undertaken by the Secretary. In *Association of American Medical Colleges v. Califano*, 569 F.2d 101, 105 (D.C.Cir.1977), the D.C. Circuit held that section 405(h) precluded the exercise of federal-question jurisdiction by a district court over a challenge brought by an association of part A *providers* to regulations issued by the then Secretary of Health, Education and Welfare.[17] The plaintiffs were an as-

---

**14.** The Supreme Court expressly rejected this distinction: "It is of no importance that respondents here, unlike the claimants in *Weinberger v. Salfi*, sought only declaratory and injunctive relief and not an actual award of benefits as well. Following the declaration which respondents seek from the Secretary—that BCBR surgery is a covered service—only essentially ministerial details will remain before respondents would receive reimbursement." *Ringer*, 466 U.S. at 615–16, 104 S.Ct. at 2021–22.

**15.** *Id.* at 614, 104 S.Ct. at 2021.

**16.** As noted by the Secretary, the plaintiff requests review "only for DRGs for which the plaintiff sought the assignment of a 'higher-weighted' (i.e. higher compensation) DRG." Deft's Reply Mem. at 3 n. 4.

**17.** The court emphasizes that the claim was brought by part A providers to demonstrate that the classification analysis in *Ringer* is not rendered inapplicable, as claimed by the plaintiffs, simply because *Ringer* involved claims by Medicare part A *beneficiaries* and not *providers*. *See* Pltf's Mem. in Opp. at 17 ("*Ringer*'s progeny are not controlling here since those cases involve *beneficiary* disputes....") (emphasis added). As both *Califano* and *Humana*, *infra* at 6–8, demonstrate, the fact that section 1395*oo* is the administrative remedy generally available to providers of services under the Act, rather than section 405(g) which is available to beneficiaries, in no way makes the analysis under section 405(h) any less applicable.

sociation of medical schools and affiliated hospitals who challenged a regulation issued by the Secretary limiting the amounts of reimbursement for so-called regular services under the Act.[18]

The complaint of the providers characterized the Secretary's actions as contrary to the Act, arbitrary and capricious, and an abuse of discretion and sought an order declaring that the regulation was invalid, an injunction against its implementation and a mandamus order requiring the Secretary to promulgate a new regulation. *Id.* at 104. In response to the claim by the Secretary that section 405(h) precluded judicial review of their claims under section 1331, the plaintiffs made arguments similar to those proffered by the plaintiffs here.

In particular, plaintiffs argued that because section 405(h) referred to "findings of fact" and "decisions of the Secretary after a hearing," the section applied only to formal adjudication of statutory claims for benefits and not to a "broad attack on an administrative regulation." *Id.* at 106. In addition, they argued that a resort to the PRRB under section 1395oo would have been futile because the PRRB was powerless to invalidate the Secretary's regulation. *Id.*

The D.C. Circuit rejected these contentions and held that "the sweeping and direct" language of section 405(h) "precludes Section 1331(a) jurisdiction of suits *seeking eventual realization of provider-cost reimbursement under the Medicare Act.*" *Id.* at 107 (emphasis added) (quoting and following *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975)). Because the underlying nature of the plaintiffs' claims envisioned recovery of additional reimbursement under the Act, the court reversed the district court's rul-

ing that it had jurisdiction under section 1331. *Id.*

Furthermore, the court found that section 405(h)'s requirement that plaintiffs' exhaust their administrative remedies under section 1395oo was "manifestly reasonable," even if the PRRB was unable to repudiate the regulation at issue. *Id.* at 108. The Court found that such a requirement would assure "the Secretary the opportunity to ascertain prior to [ ] litigation whether the claims involved were invalid for other reasons or perhaps cognizable under other provisions of the Act." *Id.* at 107–08 (quoting *Weinberger, supra*).

In this case, because the plaintiffs claims can only be characterized as *eventually seeking realization of additional provider-cost reimbursement under the Medicare Act,* this court finds that it does not have subject matter jurisdiction under section 1331. The court also rejects the plaintiffs' arguments, as the D.C. Circuit did in *American Medical Colleges,* that section 405(h) is inapplicable because by its terms it is limited to formal adjudications of claims for benefits and not a broad attack on an administrative regulation. Because the core of the plaintiffs' claims seek additional reimbursement under the Act, this court is precluded from exercising subject matter jurisdiction in this case under section 1331.[19]

This result applies even if the PRRB does not have jurisdiction as claimed by plaintiffs so that resort to the administrative process under section 1395oo would be futile. Under the D.C. Circuit's reasoning in *American Medical Colleges,* such a requirement is appropriate because it gives the Secretary the opportunity to consider the claims prior to litigation "to determine if the claims are invalid for other reasons

---

**18.** The Secretary's regulation was issued under his authority to define "reasonable costs" under the statute. *American Medical Colleges,* 569 F.2d at 103. The routine hospital services involved services such as "the regular room, dietary and nursing services, minor medical and surgical supplies, and the use of equipment and facilities for which a separate charge is not customarily made." *Id.* at 104.

**19.** As the D.C. Circuit noted, the sweep of section 405(h) bars resort to federal question jurisdiction "irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his *nondiscriminatory application of allegedly unconstitutional statutory restrictions.*" *Id.* at 106 (quoting *Weinberger,* 422 U.S. at 762, 95 S.Ct. at 2464).

or perhaps cognizable under other provisions in the Act."

The D.C. Circuit reaffirmed *American Medical Colleges* in *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070, 1080 (D.C.Cir.1978), when it ruled that a district court did not have federal question jurisdiction over a part A provider's statutory and constitutional challenges to a regulation issued by the Secretary under the Medicare Act.[20] In *Humana*, a proprietary hospital challenged the Secretary's regulation that established a maximum level for the return on equity to be reimbursed to proprietary hospitals participating in the program. *Id.* at 1073. The hospital alleged that the reimbursement authorized by the regulation contravened basic principles in the Act and sought an injunction against enforcement of the regulation, a declaration that the statute was incompatible with the Act, and retroactive corrective adjustments to the amounts previously paid under the regulation. *Id.* at 1073.

One of the arguments offered by the plaintiff in an attempt to distinguish its case from the holding in *American Medical Colleges*, an argument rejected by the D.C. Circuit, is again very similar to one of the arguments presented by the plaintiffs here. The plaintiff in *Humana* argued that federal question jurisdiction existed because its objections to the regulation were "essentially procedural" in that it had only obtained an order requiring the Secretary to undertake a study to determine a reasonable return on equity for proprietary hospitals. *Id.* at 1078–79. As paraphrased by the D.C. Circuit, plaintiffs were arguing that their claim was "not an 'action ... brought ... to recover any claim' arising under the Medicare Act, but one designed to compel the Secretary to give *appropriate procedural consideration to the issue*

*of allowable return on equity." Id.* at 1079 (emphasis added).

The D.C. Circuit flatly rejected plaintiff's characterization, finding that the statutory and constitutional objections were "unmistakably directed at upsetting on the merits the Secretary's determination on an element of cost-reimbursement."[21] After summarizing the plaintiff's arguments and assuming that its statutory construction was correct, the court found that "Humana's statutory and constitutional claims were indisputably intended to supplant the Secretary's assessment of permissible cost-reimbursement with a judicial appraisal that, according to Humana, will undoubtedly ensure more abundant returns." *Id.* at 1080. Because Humana's "fundamental grievance" centered on the amount of cost-reimbursement, the court ruled that section 405(h) barred the exercise of federal question jurisdiction by the district court. *Id.* at 1079–80.

Once again, the obvious parallel between the arguments presented to and rejected by the D.C. Circuit compel a similar result here. The essence of plaintiffs' argument here is that this complaint only seeks to require the Secretary to give appropriate procedural consideration to its complaints regarding DRG coding errors. Yet, accepting the plaintiffs' arguments concerning its entitlement to additional procedural consideration, the plaintiffs' requests will not end there. What they ultimately seek is additional compensation under the Act, here in the form of higher DRG assignments. Thus, a ruling in the plaintiffs favor here will "inextricably" lead to additional compensation under the Act in the form of higher payments when the DRG coding errors are corrected.

Because the essence of plaintiffs' claims is to increase the size of reimbursement

---

20. The court notes here that plaintiffs do not raise a claim in this action similar to the additional claim raised by the plaintiffs in *Humana*, that the Secretary "has failed to adhere to the *methodology* generally applicable to any rulemaking effort." *Id.* at 1080 (emphasis added). The court also expresses no opinion as to the continuing validity of that portion of the D.C. Circuit's decision in *Humana* dealing with the objections to the Secretary's methodology in is-

suing his rulemaking after the Supreme Court's decision in *Ringer*.

21. *Humana*, 590 F.2d at 1080. The court concluded that "Humana's fundamental grievance, then, centers on the amount of cost-reimbursement representing a return on equity capital, a subject amenable to Review Board adjudication." *Id.*

under the Act, this court finds that the plaintiffs claims here are essentially same as those discussed above in *Ringer, American Medical Colleges* and *Humana.* Accordingly, the court rejects plaintiffs' contention that jurisdiction lies here under 28 U.S.C. § 1331. The D.C. Circuit's conclusion in *Humana* as to the propriety of such a result under section 405(h), even if resort to the administrative process specified in section 1395oo is futile, applies equally well here: "Congress has made the judgment that the Secretary in the first instance must decide whether any administrative relief is forthcoming, and the question grinds to a halt right there." *Id.* at 1078.

## VI

 The plaintiffs also argue, almost in passing, that this court has subject matter jurisdiction under 28 U.S.C. § 1361 (federal mandamus). They argue that the lower courts have "held that mandamus jurisdiction exists to review issues involving the Secretary's procedures notwithstanding section 405(h), if there is a clear duty on the part of the Secretary to perform the act requested and no other remedy is available." Pltf's Mem. in Opp. at 25.

The Court rejects this contention as well, finding that other remedies are available under the Act. The Supreme Court has expressly declined to reach the question of whether section 405(h) bars mandamus jurisdiction over claims arising under the Social Security act. *Ringer,* 466 U.S. at 616, 104 S.Ct. at 2022; *Mathews v. Eldridge,* 424 U.S. 319, 336 n. 14, 96 S.Ct. 893, 903 n. 14, 47 L.Ed.2d 18 (1976). The D.C. Circuit has however reached the issue, at least in those circumstances when judicial review will ultimately be available to the claimants.[22] In *American Medical Colleges,* the D.C. Circuit held that "Section [4]05(h) is a ban on jurisdiction by way of federal mandamus in a case ... in which statutory procedures authorize review of the particular action." 569 F.2d at 112.

Because this court has found that the claims of the plaintiffs must be referred to the PRRB under section 1395oo with its provisions for judicial review, this court follows the D.C. Circuit's holding in *American Medical Colleges* and rejects the claim that subject matter jurisdiction lies in this court under 28 U.S.C. § 1361. As an alternative ground for rejecting the plaintiffs' claim, this Court follows the Supreme Court's holding in *Ringer* and finds that because the plaintiffs have failed "to exhaust all other avenues of relief" under section 1395oo, "no writ of mandamus could properly issue in this case." *Ringer,* 466 U.S. at 615, 104 S.Ct. at 2022.

## VII

For these reasons, the motion of the Secretary is granted and the underlying complaint is dismissed.

---

**22.** The court notes again, for the record, that the Secretary implicitly concedes that the plaintiffs will eventually be entitled to judicial review of their claims by arguing that the claims should first be referred to the PRRB under section 1395oo. The court can and does anticipate that the plaintiffs will ultimately be able to obtain review of these claims following a "final decision" by the PRRB.